STATE of Minnesota, Respondent,

v.

Wesley SCHILLING, Appellant.

No. 48252.

Supreme Court of Minnesota.

Aug. 18, 1978.

John Mazzitelli, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Richard G. Evans, Sp. Asst. Atty. Gen., St. Paul, Thomas O. Nagel, County Atty., Litchfield, for respondent.

Heard before TODD, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Defendant was charged by complaint with two counts of distributing a controlled substance (marijuana) in violation of Minn.St. §§ 152.09, subd. 1(1); 152.15, subd. 1(2); and 152.02, subd. 2(3). He was tried by a jury in Meeker County District Court. He was acquitted on Count I, found guilty on Count II, and is appealing from the judgment entered on the. conviction. We affirm.

On May 2, 1977, Raymond Gay, an undercover agent for the Wright County Sheriff's office, went to the home of Garry Magoon in Cokato, Minnesota. Gay intended to use Greg Magoon, Garry's brother, as an intermediary to purchase drugs as he had the day before.

Greg Magoon had gone from the house, and ultimately Gay and Garry Magoon left to buy some marijuana. Garry Magoon testified that they planned to go to defendant's home in Litchfield, Minnesota. He further stated that he had known defendant for a few years and had seen him quite often.

When they arrived in Litchfield, Gay parked near defendant's house. Gay gave Garry Magoon $800 and Garry Magoon went into defendant's house. He was admitted by a person he identified at trial as defendant. He ultimately purchased what was later determined to be 78.1 ounces of marijuana.

During his cross-examination of Garry Magoon, defense counsel attempted to elicit information about prior criminal convictions. The trial court limited defense counsel's questioning to adult felony convictions. Counsel stated on the record that he desired to cross-examine the witness " * * * to find out whether or not he has ever been incarcerated for a juvenile offense."[1]

Defendant Wesley Schilling took the stand in his own defense. He testified that

---

1. Defense counsel gave the following basis for his questioning: "Now, Your Honor, it is my understanding that this witness has been incarcerated in some respect for criminal conduct, exactly what the nature of it is I am not certain, because what I've got for that is only hearsay."

he voluntarily surrendered himself to authorities in June when he learned that he was being sought. He also testified to the following: He was briefly acquainted with Greg and Garry Magoon, but had not met Gay before the trial. He denied ever selling drugs to Greg or Garry Magoon, but was unable to remember or verify his whereabouts on May 1 or May 2, 1972.

The issue on appeal is whether the trial court's limitation of defense counsel's cross-examination of the chief prosecution witness about prior juvenile offenses denied the defendant his Sixth Amendment right to confrontation and cross-examination.

This appeal raises the question of the limits of the constitutional right of a criminal defendant to cross-examine a prosecution witness about the witness' juvenile court record in light of *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Minn.St. 260.211 protects juvenile records from disclosure except under strictly limited circumstances.[2] This privilege is recognized in Rule 609(d), Rules of Evidence. Rule 609 generally provides that the credibility of a witness may be impeached by evidence of conviction of certain crimes, but Rule 609(d) provides:

"Evidence of juvenile adjudications is not admissible under this rule pursuant to statute."

Although *Davis v. Alaska, supra,* makes it clear that this rule may not be constitution-ally applied in all cases, we hold that its use in the present case was correct.[3]

In *Davis v. Alaska, supra,* the court reversed a conviction for grand larceny and burglary because defense counsel was prohibited from cross-examining a critical prosecution witness about his probationary status growing out of a juvenile delinquency adjudication. The witness had identified the defendant as one of the men seen in the vicinity of recently discovered evidence. The identification testimony was critical in connecting the defendant with a car containing paint chips from a stolen safe.

The trial court, on the prosecutor's motion, entered an order prohibiting reference to the witness' juvenile record. At the time of trial and at the time the crime was committed the witness was on probation after an adjudication of delinquency for burglary. The Alaska Supreme Court affirmed the defendant's conviction without resolving the conflict between the state's interest in the privacy of juvenile records and the accused's right to confrontation of witnesses. The United States Supreme Court reversed, holding that the defendant's right of confrontation of adverse witnesses under the Sixth Amendment to the United States Constitution was violated by the limitation of cross-examination.[4] The *Davis* court noted that the primary interest secured by the confrontation clause is the right to cross-examine witnesses, see, *Doug-*

**2.** Minn.St. 260.211 provides: "Subdivision 1. No adjudication upon the status of any child in the jurisdiction of the juvenile court shall operate to impose any of the civil disabilities imposed by conviction, nor shall any child be deemed a criminal by reason of this adjudication, nor shall this adjudication be deemed a conviction of crime. The disposition of the child or any evidence given by the child in the juvenile court shall not be admissible as evidence against him in any case or proceeding in any other court, nor shall the disposition or evidence disqualify him in any future civil service examination, appointment, or application.

"Subd. 2. Nothing contained in this section shall be construed to relate to subsequent proceedings in juvenile court, nor shall preclude the juvenile court, under circumstances other than those specifically prohibited in subdivision 1, from disclosing information to qualified persons if the court considers such disclosure to be in the best interests of the child or of the administration of justice."

This law is similar to the Alaska statute considered in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

**3.** The Advisory Committee Comment notes that in case of conflict with constitutional provisions Rule 609(d) becomes "inoperative." Rule 609(d), Federal Rules of Evidence, makes explicit provision for the court to determine the necessity of evidence of juvenile adjudications to a fair trial.

**4.** The Sixth Amendment to the United States Constitution provides, in part: "In all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." See, Minn.Const. art. 1, § 6.

*las v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Not all cross-examination is, however, constitutionally required, and *Davis v. Alaska* is unclear about when the right of confrontation and cross-examination must legitimately yield to a state's interest in protecting the confidentiality of juvenile records.

The specific purpose for which the cross-examination in *Davis* was sought was the showing of bias. Defense counsel wished to show that the witness' probationary status could have led him to make a hasty misidentification to divert suspicion from himself. The court held that general questions regarding the existence of bias were ineffective because no basis for the bias claim could be shown without showing the actual probationary status of the witness. The court concluded:

> "The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. The State could have protected Green from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records." 415 U.S. 320, 94 S.Ct. 1112, 39 L.Ed.2d 356.

In a concurring opinion, Justice Stewart read the majority opinion narrowly stating:

> "In joining the Court's opinion, I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions." 415 U.S. 321, 94 S.Ct. 1113, 39 L.Ed.2d 356.

The Federal and state cases decided after *Davis v. Alaska* generally follow the view of Justice Stewart and distinguish cases in which cross-examination concerning prior juvenile convictions are sought for general impeachment of credibility.[5] Cases also recognize, however, that the importance of the witness to the prosecution case is an important consideration in determining whether a defendant's right to effective cross-examination was violated.[6]

■ The policy of keeping juvenile court records confidential is rehabilitative. Abrogation of the confidentiality will cause the juvenile some embarrassment and will remove some of the rehabilitative force of the juvenile justice system by removing incentives to keep out of trouble again. The United States Supreme Court recognized this and nonetheless held that the "temporary embarrassment" to the witness and his family was outweighed where the juvenile records would lead to a real possibility of serious damage to the state's case. 415 U.S. 319, 94 S.Ct. 1112, 39 L.Ed.2d 355. Even had defense counsel been able to question Garry Magoon about prior juvenile adjudications, under the facts of this case, no additional bias could have been shown. Thus, the state's interest in rehabilitation outweighed defendant's minimal interest in questioning Magoon about prior juvenile adjudications.

The parties agreed that Garry Magoon was 20 years old at the time of trial. Because any juvenile adjudications would necessarily be at least 2 years old, they would be too remote to have a bearing on the witness' bias in this case. Further, defense counsel was allowed to show and to argue that Garry Magoon had been arrested on a felony charge, that drug charges were pending against him, and that he was a

---

5. *State v. Burr,* 18 Or.App. 494, 525 P.2d 1067 (1974); *Warren v. State,* 514 S.W.2d 458 (Tex. Crim.App.1974); *United States v. Decker,* 543 F.2d 1102 (5 Cir. 1976); *Commonwealth v. Fernara,* 368 Mass. 182, 330 N.E.2d 837 (1975). See, Note: 3 Amer.J.Crim.Law 221 (1974); 13 Duquesne L.Rev. 630 (1975).

6. *United States v. Decker, supra;* cf., *Commonwealth v. DiRoma,* 364 N.E.2d 1280 (Mass. App.1977); *State v. Burnfin,* 560 S.W.2d 283 (Mo.App.1977).

regular drug user; defense counsel argued forcefully that Garry Magoon's pending charges gave him reason to lie. Unlike the witness in *Davis v. Alaska*, the specific grounds for bias were clearly presented to the jury.[7]

■ We also note that in this case defense counsel laid an inadequate foundation for the use of juvenile adjudications. While it is not necessary to rule in this case that there was a waiver of the right to use such adjudications, we believe that the better practice would be to request the trial court to obtain and examine such records and then make a ruling on their admissibility.

The trial court is affirmed.

7. Even if the trial court's ruling had been error, we would be able to hold it harmless beyond a reasonable doubt.