**STATE of Minnesota, Respondent,**

v.

**John Dean WHALEY, Appellant.**

No. CO-85-1913.

Court of Appeals of Minnesota.

June 24, 1986.

Hubert H. Humphrey, III, State Attorney General, Robert M.A. Johnson, Anoka County Attorney, Marcy S. Crain, Assistant Co. Atty., Anoka, for respondent.

Russell H. Crowder, Steffen, Munsteiger, Beens, Parta & Peterson, P.A., Anoka, for appellant.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

John Dean Whaley appeals from a judgment of conviction for assault in the third degree entered pursuant to a jury verdict on September 18, 1985 and from an October 9, 1985 order denying his motion for new trial. On appeal, he claims that the trial court committed prejudicial error when it excluded evidence of the victim's prior juvenile adjudication for theft, when it refused to allow him to comment on the victim's propensity for violence, when it denied his request for a cautionary instruction and when it disallowed inquiry into the victim's future litigation plans for the purpose of showing bias. We affirm.

## FACTS

The facts that give rise to this appeal stem from a party at the Anoka Plaza Hotel attended by John Whaley and the victim of the assault, Darren Goad, on the evening of December 1, 1984. Two altercations between Whaley and Goad took place.

The first incident occurred in a hotel room after someone spilled beer on Whaley. Whaley pushed the person he believed responsible, and she fell on top of Goad who was sitting on a nearby bed. A fight between the two men ensued. At trial three witnesses corroborated Whaley's claim that Goad was responsible for escalation of the incident. Goad testified that he began yelling at Whaley not to provoke a fight but to elicit an apology. Both men threw several punches during the fight.

Whaley testified that he hit Goad's face during the fight with sufficient force to have fractured his left cheekbone. According to Whaley and eyewitness Steven Loken, Goad was bleeding from the face when he left the room. Goad stated that he was not bleeding from the face and that only his forehead was swollen.

Uniformed police officers James Balabon and Steven Blaine responded to a call from the hotel. As they accompanied Goad back to the room where the party was being held they encountered Whaley in the hallway. The officers testified at trial that the two men started yelling at one another and that Whaley then hit Goad in the face. A loud cracking sound was heard. The testimony was conflicting as to which side of Goad's face Whaley hit.

Whaley testified that he hit the right side of Goad's face as he turned his head to the left. Goad stated that the punch hit the left side of his face. The officers gave conflicting testimony. In their initial report, they indicated that Goad was hit on the right side of his face with Whaley's right fist. At trial both testified that this report was erroneous since it was virtually impossible for Whaley to hit the right side

of Goad's face with his right fist as they faced one another.

Goad sought medical attention two days after the incident, and was examined by Dr. Gerald Jurgens, an otolaryngologist. Dr. Jurgens diagnosed a fractured nose and left cheekbone. He testified that one sharp blow to the area could have caused the fractures, but could not determine if Goad had sustained the injury during the altercation in the hotel room or later in the hallway. He stated, however, that the loud cracking noise heard by the officers after Whaley hit Goad in the hallway, was consistent with the sound of a bone being fractured. Whaley was subsequently charged with assault in the third and fifth degrees, the latter charge dismissed by the prosecution at the close of the evidence.

At the September 16, 1985 trial, while Goad was on the stand, Whaley attempted to impeach his testimony by introducing evidence of a prior juvenile adjudication for theft. The adjudication had occurred two and a half years before the trial and approximately one and a half years before the incident in question. The prosecutor objected. The trial court sustained the objection, ruling that the probative value was substantially outweighed by unfair prejudice. During cross-examination, defense counsel also asked Goad if he had considered suing Whaley in civil court. The prosecutor objected on relevancy grounds and the objection was sustained. Defense counsel was allowed to ask Goad whether he had initiated a civil action against Whaley to which he responded in the negative.

During Whaley's cross-examination, the following exchange took place:

Q. [Prosecutor] In your capacity as a security officer, people listen to you most of the time, don't they?

A. [Whaley] Yes.

Q. And you're a pretty good sized guy, so they probably pay a lot of attention to you, don't they?

A. Yes, they do.

Q. And you are not used to people fighting back, are you?

A. No.

Q. And that night when you and Darren Goad got into a fight, he surprised you when he could defend himself, didn't he?

A. No, because I knew of him. I knew what the kid was like from—

Q. When I ask you a question, you just answer yes or no.

A. No, I didn't.

On re-direct, defense counsel attempted to follow up on this question for the purpose of establishing Goad's reputation for violence. The prosecutor objected. The trial court sustained the objection, ruling that the prosecution had not opened the door to this evidence. Defense counsel made an offer of proof that Goad was a known troublemaker and had been involved in numerous fights.

During the state's closing argument, the prosecutor referred to Goad's black eye as a form of disfigurement constituting "substantial bodily harm" under Minn.Stat. § 609.02, subd. 7a (1984). Defense counsel objected that this was a misstatement of law and requested a curative instruction. The trial court noted the objection but denied the request for a curative instruction. The jury found Whaley guilty of third degree assault in violation of Minn.Stat. § 609.223 (1984). Whaley received a stayed sentence and conditional two-year probation. All post-trial motions were denied and this appeal followed.

## ISSUES

1. Did the trial court properly exclude impeachment evidence of the assault victim's 2½ year old juvenile adjudication for theft?

2. Did the trial court properly exercise its discretion when it allowed defense counsel to ask the assault victim whether he had initiated a civil action against the defendant, but refused to allow further inquiry into bias when the victim responded

in the negative and when no offer of proof was made?

3. Did the trial court err in preventing appellant from testifying about the victim's purported reputation and propensity for violence when it was undisputed that the only basis for a finding of appellant's guilt was an unprovoked attack on the victim in the presence of two witnesses?

4. Did the trial court properly deny defendant's request for a curative instruction on the definition of "substantial bodily harm" when it duly noted his objection and properly instructed the jury?

### ANALYSIS

1. The sixth amendment guarantees the accused in a criminal prosecution, the right "to be confronted with the witnesses against him". U.S. Const. amend. VI; *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Appellant contends that he was denied his right to confrontation when the trial court excluded evidence of Goad's prior juvenile adjudication for theft. We disagree.

Impeachment evidence in the form of a prior conviction is governed by Minn.R. Evid. 609, which states that juvenile adjudications "[are] not admissible under this rule pursuant to statute." Minn.R.Evid. 609(d). Under Minn.Stat. § 260.211 (1984), disclosure of juvenile records is strictly limited.[1]

The Advisory Committee Comments to Rule 609(d) recognize that where the state's policy of protecting juveniles conflicts with the sixth amendment confrontation clause, "the evidentiary rule becomes inoperative." Advisory Committee Comments, Minn.R.Evid. 609(d) (1977). *State v. Schilling*, 270 N.W.2d 769 (Minn.1978), is the leading case in Minnesota on this subject. In *Schilling*, the court held that the defendant was not denied his sixth amendment right to confront a key prosecution witness when the trial court refused to allow introduction of the witness's possible juvenile adjudications for general impeachment purposes. The key factor behind the court's decision was the remoteness of the prior adjudications. "Because any juvenile adjudications would necessarily be *at least 2 years old*, they would be *too remote to have a bearing on the witness' bias* in this case." *Id.* at 772 (emphasis supplied).

Appellant contends that *Schilling* is distinguishable from the present case on two grounds. First, that counsel in *Schilling* was uncertain whether the witness had a juvenile record where here, Goad's record for theft was uncontested. Second, that the evidence would not have been cumulative as in *Schilling* where evidence of the witness's adult felony convictions was admitted. We do not find the absence of these facts here dispositive of appellant's claim.

As the *Schilling* court explained, the specific purpose for which cross-examination was sought in the *Davis* case, was the showing of bias on the part of a witness who had identified the defendant as one of the men seen in the vicinity of newly discovered evidence. The witness was on probation at the time of the crime and his identification was a critical part of the

---

1. Minn.Stat. § 260.211 (1984) provides:

Subdivision 1. No adjudication upon the status of any child in the jurisdiction of the juvenile court shall operate to impose any of the civil disabilities imposed by the conviction, nor shall any child be deemed a criminal by reason of this adjudication, nor shall this adjudication be deemed a conviction of crime. The disposition of the child or any evidence given by the child in the juvenile court shall not be admissible as evidence against him in any case or proceeding in any other court, * * * nor shall the disposition or evidence disqualify him in any future service examination, appointment, or application.

Subd. 2. Nothing contained in this section shall be construed to relate to subsequent proceedings in juvenile court, nor shall preclude the juvenile court, under circumstances other than those specifically prohibited in subdivision 1, from disclosing information to qualified persons if the court considers such disclosure to be in the best interests of the child or of the administration of justice.

government's case. Thus, a hasty misidentification of the defendant could have been made by the witness in order to divert suspicion from himself. The *Davis* court held that the defendant's right to confrontation was violated by exclusion of the witness's probationary status since a basis for the bias claim could not be established without this information. *Davis*, 415 U.S. at 320, 94 S.Ct. at 1112.

In *Schilling*, by contrast, the court noted that even if defense counsel had been able to question the prosecution witness about possible juvenile adjudications, *"no additional bias* could have been shown." *Schilling*, 270 N.W.2d at 772 (emphasis supplied).

Here, the juvenile adjudication in question occurred 2½ years before trial and related to a prosecution witness who was *also the victim* of the crime. Clearly, use of the evidence for the purpose of establishing the witness's bias was not as compelling as that in *Davis*.

Appellant also relies on *State v. Patterson*, 329 N.W.2d 840 (Minn.1983), where evidence of the victim's juvenile adjudication for armed robbery was allowed into evidence. *Patterson* is not on point. The robbery adjudication in that case occurred several months *after* the defendant was charged. Remoteness of the offense was thus not a basis for exclusion.

An examination of the record discloses that the trial court in the instant case properly considered the applicable standards:

> I have considered 609(d), Minnesota Statute 609. I have read *Davis vs. Alaska*, the *Schilling* case, and I'm convinced in this situation the probative value of the evidence of a juvenile adjudication is substantially outweighed by the danger of unfair prejudice * * *.

In *Schilling*, the court stated its preference for providing a trial court with the juvenile records in question so that it could more accurately determine the admissibility of the evidence. Here, Goad's record was not available, although counsel agreed to the underlying facts. The absence of the records did not affect the trial court's ruling, however:

> The Court would rule as it did in any event. If the witness were the defendant, it might be more persuasive. The Court is not persuaded that the evidence that would be introduced outweighed * * the potential prejudice and that's really the substance of the Court's ruling.

The trial court properly acted within its discretion. *See State v. Andersen*, 370 N.W.2d 653, 664 (Minn.Ct.App.1985). Even if we were to find the trial court's ruling erroneous, we would hold it harmless beyond a reasonable doubt. *See Schilling*, 270 N.W.2d at 773, n. 7.

2. Appellant contends that he was prejudiced when the trial court prevented full inquiry into the victim's intent to bring a civil action against him. This argument is meritless. The following exchange took place at trial:

> Q. Now, Mr. Goad, have you thought about the possibility of suing Mr. Whaley in civil court?
>
> [by prosecutor]: Your Honor, I object to that. That's irrelevant at this point.
>
> [the court]: Objection is sustained.
>
> [by defense counsel]: Your Honor, I believe, for the record, its relevant for purposes of showing possible bias.
>
> [the court]: You may ask the witness whether he initiated a civil action.
>
> [defense counsel]: That is the extent of the inquiry * * * allowed?
>
> [the court]: That is correct.
>
> [defense counsel]: Have you initiated litigation against Mr. Whaley?
>
> [Darren Goad]: No, sir.

As a general rule, a prosecution witness may be cross-examined to show the *pendency* of a civil action for damages by the witness against the accused. *State v. Goar*, 311 Minn. 560, 561, 249 N.W.2d 894,

895 (1977). Appellant relies on *State v. Underwood*, 281 N.W.2d 337 (Minn.1979) to support his claim of prejudicial error.

In *Underwood*, the trial court excluded evidence relating to a prosecution witness's intent to file a civil lawsuit against the defendant. The defendant made an offer of proof showing that the witness had consulted a private attorney about recovery of damages and had made a statement at an omnibus hearing expressing his belief that the defendant should reimburse him for his medical bills. The court reversed the aggravated assault conviction, citing this exclusion as one of four incidents of prejudicial error.

> It is a general rule that all evidence which may tend to impeach a witness is relevant. Because evidence of defendant's conviction would be admissible in a subsequent civil action brought by [the prosecution witness] under Rule 803, subd. 22, Minnesota Rules of Evidence, [he] has a decided interest in the outcome of the trial and defendant should be entitled to introduce this evidence. There may be instances, although rare, where the probative value of the impeachment evidence may be outweighed by its tendency to prejudice or confuse the jury. In such cases, evidence that a prosecuting witness has contemplated filing a civil lawsuit against the defendant may be properly excluded. This, of course, is a matter wholly within the sound discretion of the trial court. In the case before us we believe that the jury was entitled to hear this evidence and that its exclusion was detrimental to the defendant.

*Id.* at 341. *Underwood* thus expanded *Goar* to allow inquiry into a *contemplated* lawsuit as well as a *pending* lawsuit by an adverse witness against the defendant. *See State v. Tenhoff*, 322 N.W.2d 354, 356 (Minn.1982).

*Underwood* is distinguishable from the instant case. First, the defendant made a detailed offer of proof in that case while in the present case, no offer of proof was made. Second, the primary issue in *Underwood* was whether the defendant had acted in self defense. The facts were so close on this point that any error, however small, may have prejudiced the defendant. *See Underwood*, 281 N.W.2d at 344. More importantly however, unlike the defendant in *Underwood*, appellant was allowed to ask Goad whether he had initiated a lawsuit. Goad responded that he had not. Since defense counsel did not make an offer of proof, the trial court had no basis for concluding that the probative value of further inquiry outweighed undue prejudice. Under the circumstances, we cannot say that the trial court abused its discretion. *See Tenhoff*, 322 N.W.2d at 356.

3. After appellant responded during cross-examination that he was not surprised by Goad's ability to defend himself during the initial altercation, defense counsel attempted to explore this line of questioning on re-direct:

> Q. Okay, now you indicated during cross-examination of the question was, "Were you surprised by Mr. Goad's fighting with you or fighting back?"
>
> A. No.
>
> Q. Why?
>
> A. *From what I heard of him.* (Emphasis supplied)

Following the prosecutor's objection, the following discussion took place at the bench:

> [Defense counsel] It is our position that Mr. Whaley should be allowed to describe the reasons why he was not surprised by Mr. Goad's fighting with him. It is my position that the State opened the door by asking that question, and that by opening the door we should be allowed to delve into those facts, and I think an offer of proof * * * if my client was allowed to testify on that vein, that they would indicate that Mr. Goad is known to be a fighter himself, to have been in many fights and is considered a troublemaker, and I think we would illustrate that through some examples.

[Prosecutor] Your Honor, the State's position is that it did not open the door by asking that question. The whole purpose of the line of questioning was to establish that the defendant became angry when he was up against someone who was able to defend himself and that was the reason which prompted his angry departure into the hallway and strik[ing] Mr. Goad in the face in the presence of the officers.

[Court]: Well, the Court disagrees, and feels that the door to the testimony was not opened * * * the objection is sustained.

Appellant claims that exclusion of this evidence was prejudicial error. Generally, during re-examination, a witness may be fully examined as to all matters brought out in cross-examination. *See* Minn.R. Evid. 611(b). *See also State v. Fulford,* 290 Minn. 236, 187 N.W.2d 270 (1971). Under the facts of this case, however, the trial court did not err in prohibiting this line of questioning.

The jury was instructed that they could only find appellant guilty if they determined that the altercation in the hallway caused the fracture of Goad's cheekbone. It was undisputed that this particular incident was unprovoked. Had the jury been asked to determine whether appellant acted in self-defense, the likelihood of prejudicial error resulting from the exclusion would be more pronounced. Even if we were to find error in exclusion of this testimony, it would be harmless error since defense counsel was allowed to tell the jury during closing argument that Goad was known to be a fighter, and since three witnesses testified that Goad was the aggressor in the initial fight. Therefore, the jury was presented with evidence with which to infer that Goad had a propensity for violence. By returning a verdict of guilty, the jury implicitly found that the altercation in the hallway, and not the initial altercation in the hotel room, caused the injury.

4. Appellant was convicted under Minn. Stat. § 609.223 (1984), which provides:

Whoever assaults another and inflicts *substantial bodily harm* may be sentenced to imprisonment for not more than three years or to payment of a fine of not more than $5,000, or both. (Emphasis supplied)

Substantial bodily harm is defined under Minn.Stat. § 609.02, subd. 7a:

"Substantial bodily harm" means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily member or organ, or which *causes a fracture of any bodily member.* (Emphasis supplied)

During the State's closing argument, the following took place:

Now, we had Dr. Jurgens here. Let's look at the disfigurement, first of all. You saw the photos of the victim. This ladies and gentlemen, is disfigurement. When you *have a black eye and your face is swollen, that is disfigurement.*

[Defense counsel]: I'd object, that's a misstatement of the law. A black eye is not, by definition, substantial bodily injury.

[Court]: *All right, it's noted.* (Emphasis supplied)

Appellant claims that the denial of his subsequent request for a curative instruction was prejudicial error. We disagree. We note, however, that under Minnesota law a black eye, in and of itself, does not equate to "substantial bodily harm," a point respondent concedes.

The court here duly noted appellant's objection in the presence of the jury. Even if the prosecutor misstated the law initially, the balance of her closing argument correctly stated the law. A closing argument should be taken as a whole, with no single phrase taken out of context and used as the basis of a reversal. *State v.*

*Stephani,* 369 N.W.2d 540, 547 (Minn.Ct. App.1985). *See State v. Southard,* 360 N.W.2d 376, 383 (Minn.Ct.App.1985). Most importantly, however, the court properly instructed the jury. In *State v. Trimble,* 371 N.W.2d 921, 926 (Minn.Ct.App.1985), the prosecutor's misstatement of law did not require reversal because the trial court fully and properly instructed the jury. Thus, the improper remarks likely did not play "a substantial part in influencing the jury to convict." *Id.* at 927 (quoting *State v. Caron,* 300 Minn. 123, 128, 218 N.W.2d 197, 200 (1974). Since it was uncontested that Darren Goad suffered facial fractures as a result of appellant's actions, a clear basis for the verdict exists independent of any error committed by the prosecutor.

## DECISION

Appellant's conviction for assault in the third degree is affirmed.

Affirmed.