**STATE of Minnesota, Respondent,**

v.

**Calvin Lawrence KINGBIRD, Appellant.**

**No. C8–87–206.**

Court of Appeals of Minnesota.

Sept. 22, 1987.

Review Denied Nov. 6, 1987.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen.,

St. Paul, Thomas J. Keyes, Beltrami Co. Atty., Bemidji, for respondent.

C. Paul Jones, State Public Defender, James M. Burseth, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and FOLEY and HUSPENI, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Following a jury trial, appellant Calvin Lawrence Kingbird was convicted of second degree burglary and sentenced to the presumptive sentence of 46 months. On appeal, Kingbird asserts the evidence was insufficient to support his conviction and prosecutorial misconduct denied him a fair trial.

## FACTS

At approximately 9:15 p.m. on August 22, 1985, Jody Yerbich returned to her trailer home and noticed a pickup truck parked near her driveway. As she entered her driveway, she noticed a number of irregularities—her husband's motorcycle was tipped on its side, a screen was removed and several lights were on in her house—and immediately called police.

The police arrested three suspects at the scene, Peggy Kingbird, appellant's sister-in-law, Benjamin Kingbird, appellant's brother, and Ronald Smith. Police investigation of Yerbich's house revealed that four rifles, a clock, a camera, various tools, a lawnmower, a bottle of tequila and some food were missing. Most of the missing items were found in the back of the truck and in a nearby ditch. The guns were found 17 days later behind a church located across from Yerbich's home.

At trial, the prosecutor called five witnesses, Yerbich, Peggy Kingbird, Sgt. Cross, Sgt. Fitzgerald and Sgt. Bergstrom. Cross testified that after Peggy Kingbird was arrested she told him appellant was with them earlier that evening. As a result, Fitzgerald searched the area.

Driving north, Fitzgerald observed a man, later identified as appellant, approximately one mile from Yerbich's home. Fitzgerald testified that while he waited for Cross to arrive, appellant asked, "[A]ren't you going to arrest me?"

Before Peggy took the witness stand, an in chambers discussion was held in which Peggy's attorney informed the court that because she was also charged with second degree burglary, she was claiming the privilege against self-incrimination. The prosecutor informed the court that he had filed a motion to compel Peggy's testimony. As a result, the court required Peggy to testify, but granted her immunity with respect to the testimony on any charges brought against her.

Peggy testified that she, appellant, Benjamin and Smith had been drinking most of the day of the crime, that they were on their way home when their truck ran out of gas and that Benjamin and appellant went to Yerbich's house in search of gas. When Peggy went to see why it was taking them so long, she saw appellant and Benjamin inside Yerbich's house. Peggy testified that she did not enter Yerbich's house, nor did she see either Benjamin or appellant remove property from the house or the garage. Peggy also testified that she did not remember seeing appellant with any guns or property that belonged to Yerbich.

Peggy did, however, recall making a formal statement to police later that evening, but stated that she was too intoxicated to remember what she had said. When asked if she remembered speaking to the prosecutor that morning, Peggy testified that she did. The trial court sustained defense counsel's objection to this line of questioning.

The prosecution then offered to introduce Peggy's prior statement to refresh her recollection, but Peggy stated that it was unnecessary because she had already read her statement. Over defense counsel's objection, Peggy admitted her statement said that she entered Yerbich's house and garage, that Benjamin and appellant had forcibly entered Yerbich's house, and that she told Cross appellant had some guns.

When Peggy subsequently claimed that she had no independent knowledge of her prior statements because she was intoxicated at the time, the prosecutor asked:

[Prosecutor]: Is there any reason why you remembered it this morning and not at this time?

[Peggy]: When you asked me those questions, I was just telling you what it said [in my statement].

Defense counsel objected to the prosecutor's reference to previous conversations with Peggy and trial court overruled the objection. Rephrasing his question, the prosecutor asked:

[Prosecutor]: I will ask the question again. Did you have any reason why you could remember this this morning and not at this time?

[Peggy]: When you were asking me those questions, I was telling you what it said [in the statement].

[Prosecutor]: Isn't it true that you answered my questions [earlier in the day] before you reviewed your statement?

[Peggy]: Yeah, I answered them.

On redirect, Cross testified, over an objection by defense counsel, that in a summary report Peggy had stated that appellant had left with the guns and went toward the highway. Cross acknowledged that while Peggy had quite a bit to drink prior to questioning, she appeared to understand what she was doing.

Appellant testified that he was on his way to his mother's home to get gas for the truck when the police stopped him. The evidence, however, established that his mother's home was seven to eight miles away. Appellant denied any involvement in the burglary and explained that he asked Fitzgerald about arrest because he was driving the truck without a license.

When the prosecution introduced evidence of appellant's prior convictions for unauthorized use of a motor vehicle and escape, which were more than 10 years old, defense counsel failed to object.

The jury found appellant guilty of burglary in the second degree.

## ISSUES

1. Was the evidence sufficient to support appellant's conviction for second degree burglary?

2. Did prosecutorial misconduct deny appellant a fair trial?

## ANALYSIS

1. In reviewing a sufficiency of evidence claim, we review the record in the light most favorable to the finding of guilty and determine whether the facts and any legitimate inferences drawn from the facts reasonably support the jury's verdict. *State v. Harrison,* 279 Minn. 310, 318, 156 N.W.2d 763, 769 (1968). Further, we must assume that the jury believed the state's witnesses and disbelieved any contradictory testimony. *State v. Wahlberg,* 296 N.W.2d 408, 411 (Minn.1980).

■ Appellant claims that since the state's case against him depended on a single witness, accomplice Peggy Kingbird, her veracity must be closely scrutinized. *State v. Hamilton,* 289 N.W.2d 470, 477 (Minn.1979). It is appellant's position that his conviction cannot stand because Peggy's testimony was substantially impeached and uncorroborated.

Minn.Stat. § 634.04 (1986), provides, in part:

A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense * * *.

Interpreting section 634.04, the Minnesota Supreme Court has held:

[C]orroboration need not be of sufficient weight to establish a prima facie case for conviction. Circumstantial evidence which clearly supports defendant's implication in the crime may be enough. The defendant's presence in the vicinity of the offense, in company with accomplices and under suspicious circumstances, will constitute adequate corroboration.

*State v. Stave,* 280 Minn. 269, 270–71, 158 N.W.2d 848, 850 (1968). Further, corroboration is sufficient if it "restores confidence in the accomplice's testimony, confirming its truth and pointing to the defendant's guilt in some substantial degree." *State v. Lemire,* 315 N.W.2d 606, 610 (Minn.1982). Corroboration of an accomplice's testimony on every point or element of the crime is not required. *Id.* The weight of Peggy's testimony was for the jury to determine, and in any event, her testimony that appellant and Benjamin were inside the Yerbich home was not impeached.

■ Corroborative evidence may be circumstantial, such as evidence of the accused's presence at the scene of the crime. *State v. Star,* 248 Minn. 571, 576, 81 N.W.2d 94, 98 (1957). *Compare State v. Mathiasen,* 267 Minn. 393, 127 N.W.2d 534 (1964) (accomplice's testimony was not sufficiently corroborated where testimony merely place the defendant at the scene of the crime and where defendant never said anything inconsistent with a claim of innocence).

Here, the police found appellant walking down a road only one mile from Yerbich's home. Appellant's own testimony established that he was in the truck when it allegedly ran out of gas near Yerbich's home. Further, Cross testified that Peggy told him appellant had guns in his possession on the evening of the crime. Although no contraband was found on or near where appellant was stopped, we find it significant that the guns were later found near a church located just north of Yerbich's home and in the same direction appellant was walking.

In addition, Sgt. Fitzgerald testified that while waiting for Cross, appellant asked, "[A]ren't you going to arrest me?" Unlike *Mathiasen,* this statement is clearly inconsistent with a claim of innocence. *Mathiasen,* 267 Minn. at 401, 127 N.W.2d at 540.

Here, testimony of the police officers and accomplice Peggy Kingbird placed appellant in the vicinity of the crime. Where evidence of corroboration exists, the jury is entitled to consider its weight and credibili-

ty. *State v. Comparetto,* 292 Minn. 425, 427, 193 N.W.2d 626, 628 (1971). Thus, we find no merit to appellant's claim of insufficiency of the evidence.

**2.** In assessing prosecutorial misconduct, the underlying concern is whether the defendant received a fair trial. *Wahlberg,* 296 N.W.2d at 420. In cases involving serious misconduct, we require "certainty beyond a reasonable doubt that the misconduct was harmless before affirming." *State v. Caron,* 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974). In cases involving less serious misconduct, we must decide whether the "misconduct likely played a substantial part in influencing the jury to convict." 300 Minn. at 128, 218 N.W.2d at 200.

First, appellant claims that the prosecutor improperly interjected himself into the case by repeated references to his conversation with Peggy just prior to trial. Even if the prosecutor improperly attacked the veracity of the witness, we do not find the misconduct to be substantial. The inconsistencies between Peggy's in-court testimony and her prior statement achieved the same purpose as the prosecutor's alleged misconduct. As a result, it is unlikely that the statements influenced the jury to convict. We find that the prosecutorial misconduct, if any, did not deny appellant a fair trial.

Second, appellant claims the prosecutor failed to adhere to Minn.Stat. § 609.-09, subd. 1 (1986), which sets forth the procedure for compelled testimony and use immunity. The statute provides, in part:

In any criminal proceeding, * * * if it appears a person may be entitled to refuse to answer a question * * * on the ground that the person may be incriminated thereby, and if the prosecuting attorney, *in writing,* requests the * * * judge * * * to order that person to answer the question * * * the judge, after notice to the witness and hearing, shall so order if the judge finds that to do so

would not be contrary to the public interest * * *.

*Id.* (emphasis added).

The prosecution argues that even if it did not file a written motion pursuant to Minn. Stat. § 609.09, subd. 1, appellant does not have standing to challenge the grant of immunity to a witness who testifies against him. We agree. The statute clearly applies to the witness, not the defendant. A challenge to a grant of immunity, like the assertion of the privilege against self-incrimination, is personal. Defendants are without standing to contest the legal sufficiency of the grant of immunity. *See United States v. Lewis,* 456 F.2d 404, 409 (3d Cir.1972).

Finally, appellant claims he was improperly impeached by the prosecutor's use of his three prior convictions, all of which were more than 10 years old. *See* Minn.R. Evid. 609. Appellant failed to object at trial and, therefore, has waived the right to raise the issue on appeal. *See State v. Russell,* 330 N.W.2d 459 (Minn.1983).

### DECISION

Appellant's conviction for second degree burglary is affirmed.

Affirmed.