**STATE of Minnesota, Respondent,**

**v.**

**Kevin Maurice TENNIN, Appellant.**

**No. C3–88–1533.**

Court of Appeals of Minnesota.

March 14, 1989.

Review Denied April 24, 1989.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, Bob E. Ebbesen, Redwood Co. Atty., Redwood Falls, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and CRIPPEN and KALITOWSKI, JJ., without oral argument.

## OPINION

HUSPENI, Judge.

Kevin Tennin was convicted after a jury trial of first degree burglary, theft, receiving stolen property, and conspiracy. On appeal he argues that the evidence was insufficient to convict, that he was denied a

constitutional right to confront an adverse witness, and that the prosecutor engaged in misconduct. We affirm.

## FACTS

On the afternoon of January 13, 1988, appellant and S.P. (a juvenile identified as an accomplice in the crimes charged) drove to the vicinity of the Red Cedar Sporting Goods Store in Redwood Falls. Several of appellant's relatives accompanied them.

After entering the store, appellant and S.P. sat on the back steps facing the back door for one-half to one hour. Then they engaged a clerk who showed them various guns and ammunition for 10 to 15 minutes. The clerk observed that the pair seemed "interested" in the guns. Before the two returned to the car, S.P. told appellant he was going to come back to the gun store that night and steal the guns. S.P. testified that appellant agreed to go back to the store that night with him.

In the presence of other family members in the car, S.P. said "Man, we can get them." Appellant said to his mother that S.P. was in the store trying to steal the guns. S.P. was then asked to get out of the car and did. S.P. testified that later that night he and appellant returned to the sporting goods store and parked in the alley in the rear.

S.P. further testified that he and appellant then pulled on the back door of the sporting goods store, went in, took several guns, left the store, and threw the guns in the back of the car. S.P. further testified that the two then returned to the store, took numerous rounds of ammunition, threw them in the back of the car, left with appellant driving, drove too fast, got stuck in a snowdrift and couldn't get out.

A police squad car came upon the car containing S.P. and appellant stuck in the drift. The car was smoking as though overheated and the doors were open. At trial the officers testified that two black males were standing by the car. At trial S.P. testified that when he and appellant saw the police car approaching, they started to run away with the guns. As they were running away from the police, S.P.

testified he threw down the guns in the snow, took his coat off and kept running; and that appellant did likewise by removing his coat with the guns in it and running away from the police. S.P. was later apprehended. Appellant eluded the police.

Appellant denied being involved in the burglary. He testified that earlier that evening he, his brother, and S.P. were listening to some tapes in his sister's car, that he went inside for more tapes and when he came back the car was gone. Appellant further testified that he tried to wake up his mother to tell her the car was gone, then went back to cook some chicken, and gave his niece some of the food when she stopped by. Appellant testified that about 10 or 15 minutes after his niece left, S.P. stopped by, saying he needed help getting appellant's sister's car out of the ditch. Appellant stated that he then put on his coat, went out with S.P. to try to get the car out of the ditch, but ran away when he saw the police coming up to the car.

When police went to appellant's sister's apartment to check on the report that her car had been stolen, appellant was asleep on the floor. The police handcuffed him, searched the apartment and then released appellant, saying he was "in the clear."

After S.P. implicated appellant, appellant was arrested.

## ISSUES

1. Was the evidence sufficient for the jury to reasonably conclude that appellant was guilty of first degree burglary, theft, receiving stolen property and conspiracy?

2. Was the appellant prejudiced by denial of a constitutional right to confrontation and cross-examination when the trial court refused to allow appellant's counsel to impeach the credibility of a state witness through use of a juvenile delinquency adjudication?

3. Was the appellant prejudiced by prosecutorial misconduct when improper comments were made?

## ANALYSIS

■ 1. Appellant questions the sufficiency of the evidence supporting the jury's verdict.

In reviewing a sufficiency of evidence claim, we review the record in the light most favorable to the finding of guilty and determine whether the facts and any legitimate inferences drawn from the facts reasonably support the jury's verdict. *State v. Harrison,* 279 Minn. 310, 318, 156 N.W.2d 763, 769 (1968). Further, we must assume that the jury believed the state's witnesses and disbelieved any contradictory testimony. *State v. Wahlberg,* 296 N.W.2d 408, 411 (Minn.1980).

*State v. Kingbird,* 412 N.W.2d 350, 353 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Nov. 6, 1987).

If the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that [the appellant] was proven guilty of the offenses charged, a reviewing court will not disturb its verdict.

*State v. Norgaard,* 272 Minn. 48, 52, 136 N.W.2d 628, 632 (1965). Appellant argues that the testimony of S.P., an accomplice, was substantially impeached, and that there was insufficient corroborative evidence to permit conviction.

Minn.Stat. § 634.04 (1986) states:

A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

■ Initially, appellant cites inconsistencies between S.P.'s testimony and that of one of the police officers. S.P. testified that appellant was driving the getaway car, while one of the police officers stated that he saw S.P. on the driver's side of the car. However, since the officer also stated that S.P. and appellant were outside the car, the jury could have reasonably inferred that the two switched sides upon alighting from the car. Further if, in fact, appellant had participated in the burglary of the store,

his culpability would not be reduced because he did not also drive the car.

■ Appellant also argues that the necessary corroborative evidence under section 634.04 was insufficient. We cannot agree.

Corroborating evidence must link or connect the defendant to the crime. It is not necessary that it establish a prima facie case of the defendant's guilt. * * * It must point to the defendant's guilt in some substantial degree. The quantum of corroborative evidence needed necessarily depends on the circumstances of each case. * * * Corroborating evidence may be circumstantial or direct.

*State v. Adams,* 295 N.W.2d 527, 533 (Minn.1980) (citations omitted).

In this case there was corroborative testimony from the store clerk and from appellant himself that he and S.P. were in the sporting goods store the afternoon before the burglary. The clerk testified that S.P. and appellant sat on the store steps facing the back door for a half hour. The police chief testified that this was the same door which had been pried open or pulled off when he arrived at the scene in the early hours of January 14, 1986. The police chief also testified a number of shells were found in the snow behind the store. The store owner testified that he locked the back door of the store when he left the prior evening. The jury reasonably could have inferred that appellant and S.P., by sitting by the back door of the store as long as they did, may have been studying it as a possible access point.

Also, appellant himself testified that he looked at the guns with S.P. the afternoon before the burglary. The clerk observed that both men appeared "interested" in the guns. The jury could have interpreted this to be circumstantial evidence that appellant may have been checking the quantity and quality of the guns in preparation for the robbery. *See State v. Mathiasen,* 267 Minn. 393, 398–99, 127 N.W.2d 534, 538 (1964).

Particularly corroborative is appellant's own statement that S.P. had gone into the sporting goods store first and came back to tell appellant what he found:

"Man, they've got shotguns in there," and he's going to steal * * *. "And all you got to do is sit there on the stairs, you know, if [the clerk] ain't watching and you can, you know, all you have to do is sit there and slide it out."

There is a reasonable corroborative inference that appellant's presence on the steps with S.P. could have been joint participation or preparation for the crime. *See Mathiasen* at 398–99, 127 N.W.2d at 538.

 Additional corroborative evidence is presented by appellant's statement that he put two handguns inside his coat, constituting possession of the fruits of criminal conduct, *see Mathiasen* at 399, 127 N.W.2d at 539, by appellant's act of discarding those inculpatory fruits in the snow when the police approached, and by appellant's flight from the police when they told him to stop. The latter two actions could reasonably lead to an inference of a guilty mind. *See Kingbird,* 412 N.W.2d at 353.

Recognizing that the jury may have believed the state's witnesses and disbelieved inconsistent testimony from defense witnesses, there is ample corroborative evidence to S.P.'s inculpatory testimony to support the jury's verdict of guilty. The evidence is particularly corroborative when it associates appellant with his accomplice in both the preparatory as well as the end stage of the crime.

 Finally, appellant's argument that the evidence was insufficient to prove that he possessed all the guns and ammunition in the car is without merit.

> [E]xclusive possession or control [of stolen property] means exclusive of third parties, not exclusive of other parties to the crime.

*State v. Phelps,* 297 Minn. 61, 65, 209 N.W. 2d 780, 782 (1973).

The state's expert witness testified that the value of all the stolen guns was $2,879.71. Therefore, under *Phelps,* appellant is considered to have had the $300 worth of stolen goods in his possession required for a theft conviction under Minn. Stat. § 609.52, subd. 2(1) and subd. 3(2) (Supp.1987).

Moreover, appellant testified that he put two of the pistols in his coat pocket. The state's witness placed a value of over $200 on each of the three stolen handguns. The record supports the state's observation that the value of the handguns was over $300, and appellant, by placing them in his pocket, certainly possessed them.

There was sufficient evidence to show beyond a reasonable doubt that appellant possessed stolen property with a value of over $300 in violation of Minn.Stat. § 609.52, subd. 2(1) and subd. 3(2).

 2. Appellant argues that he was denied his constitutional right to confront an adverse witness and impeach his credibility when the trial court refused to permit cross-examination of S.P. with regard to a subsequent juvenile adjudication of delinquency for car theft.

Relying on *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), appellant contends that in balancing the interests of the state in the confidentiality of juvenile adjudications with the interests of the appellant in exposing possible weaknesses in S.P.'s testimony through cross-examination, the interests of the state must yield because S.P.'s testimony was so crucial to the state's case. Furthermore, appellant contends that the state's interest in the privacy of juvenile adjudications of delinquency was lessened since S.P. was an admitted delinquent.

We cannot agree with appellant's contention that the trial court erred in refusing cross-examination on S.P.'s subsequent delinquency adjudication. We note first that this cross-examination was sought in order to impeach credibility. However, in *State v. Schilling,* 270 N.W.2d 769 (Minn.1978), the Minnesota Supreme Court noted several federal and state cases which adopted a narrow interpretation of *Davis* and held *Davis* to apply particularly to cases where the cross-examination is sought to show bias. *Id.* at 772 n. 5. In *Schilling,* the trial court refused to allow defense counsel to cross-examine a state witness as to prior juvenile adjudications of delinquency in order to attack credibility. The *Schilling*

court, concerned with the state interest in the confidentiality of juvenile adjudications as embodied in Minn.Stat. § 260.211 and Minn.R.Evid. 609(d), affirmed the trial court and found there was no constitutional violation of the defendant's right to confrontation. *Schilling,* 270 N.W.2d at 772, 773. The holding of *Schilling* was based on a narrow reading of *Davis* that echoed the concurrence of Justice Stewart. *See Davis,* 415 U.S. at 321, 94 S.Ct. at 1112. The *Schilling* court found there was no constitutional error when counsel for the defendant sought to impeach the witness's credibility, rather than to show bias. Further, in *Schilling* defendant's counsel had presented the grounds for bias to the jury. *Id.,* 270 N.W.2d at 773.

In this case, as in *Schilling,* counsel for the accused sought to attack the credibility of the witness through cross-examination as to a juvenile adjudication of delinquency. Also, as in *Davis,* appellant's counsel did present grounds for the witness's bias, not just in final argument, but also in direct examination of appellant's niece and cross-examination of S.P. himself. Moreover, since S.P. was an admitted delinquent and his testimony was self-incriminating, the impeachment value of cross-examination here was slight.

The two Minnesota cases which appellant cites in support of his argument on impeachment are distinguishable. In *In re Matter of Welfare of C.D.L.,* 306 N.W.2d 819 (Minn.1981), the court allowed the use of a juvenile adjudication to impeach the witness's general credibility in a subsequent juvenile adjudication. *C.D.L.* was not decided on constitutional grounds, however, but rather the statutory exception of Minn.Stat. § 260.211, subd. 2: "Nothing in this section shall be construed to relate to subsequent proceedings in juvenile court * * *." *See C.D.L.* at 821. The *C.D.L.* court also noted that juvenile proceedings were closed to the public. *Id.*

In *State v. Patterson,* 329 N.W.2d 840 (Minn.1983), the trial court's decision to allow impeachment by a witness's prior adjudication of delinquency for armed robbery, and refusal to admit details, was af-

firmed on appeal. *Id.* at 841. Unlike this case, the relevant issue on appeal in *Patterson* was not whether evidence of a juvenile adjudication of delinquency should be admitted, but the extent to which details of the delinquency adjudication of an adverse witness must be admitted. The issue of whether or not to admit evidence of a juvenile adjudication was not before the *Patterson* court, thus limiting its holding. Therefore, the controlling rule in *Patterson* was not Minn.R.Evid. 609, but Minn.R.Evid. 403, which was held to be properly applied to limit evidence of the details of the juvenile adjudication of delinquency for armed robbery. *Id.*

■ We conclude that appellant's position is similar to that of the defendant in *Schilling* and that appellant was not deprived of his constitutional right of confrontation. Indeed, even if we were to assume constitutional error in denying appellant's confrontation clause rights, that error would be evaluated under the factors of *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674:

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of the cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.*

While S.P.'s testimony is important to the success of the state's case because S.P. directly implicates appellant in the crimes, and while S.P.'s testimony is not cumulative, there is substantial corroborative circumstantial evidence. There was ample cross-examination of S.P. The prosecution had a strong case, due to the variety and scope of both circumstantial evidence and the reasonable inferences from various statements of the appellant himself. Thus, even if constitutional error were present

here, it would be harmless beyond a reasonable doubt, when viewed in the context of the record as a whole.

3. Appellant also contends the trial court erred in not granting his motion for a mistrial due to misconduct of the prosecutor in his closing argument.

The prosecutor made three comments which appellant cites as prejudicial. In the remark on which appellant based the motion for mistrial, the prosecutor compared S.P.'s background with the appellant's, and said with reference to appellant:

> You know he has the experience to do this type of stuff, an attempted burglary and three burglary convictions, it's all the same ballpark.

In the second cited comment, the prosecutor stated:

> Now, the police officers probably don't have a motive to lie * * *. The other witnesses that you heard testify, such as Tom Ellig, and the store clerk, they have no motive to lie * * *. Do any of those [family members of the appellant] have a motive to lie? Well, we'd like to think not. But, you know family members generally might want to help protect one of their family members. So, you might want to consider that when you consider the credibility of their testimony.

The third remark referred to the state's witness S.P.:

> He was on the stand, he looked credible, I would think.

The rule for evaluating prosecutorial misconduct of this type was set forth in *State v. Wahlberg*, 296 N.W.2d 408, 420 (Minn.1980):

> Whether a new trial should be granted because of misconduct of the prosecuting attorney is governed by no fixed rules but rests within the discretion of the trial judge, who is in the best position to appraise its effect. The court's determination should be reversed on appeal only where the misconduct, viewed in the light of the whole record, appears to be inexcusable and so serious and prejudicial that defendant's right to a fair trial was denied.

More particularly, in determining whether any prosecutorial misconduct was harmless, there is a sliding scale test:

> The test of determining whether prosecutorial misconduct was harmless depends partly upon the type of misconduct with which we are dealing. That is, the more serious the misconduct, the more certain of its effect this court has felt that it should be before labeling the error harmless. Thus, in cases involving unusually serious prosecutorial misconduct this court has required certainty beyond a reasonable doubt that the misconduct was harmless before affirming. * * * On the other hand, in cases involving less serious prosecutorial misconduct this court has applied the test of whether the misconduct likely played a substantial part in influencing the jury to convict.

*State v. Caron*, 300 Minn. 123, 127–28, 218 N.W.2d 197, 200 (1974).

■ If the first remark cited by appellant had been offered as evidence, it would have been inadmissible under Minn.R.Evid. 404(b) as tending to show commission of a crime by prior bad acts/crimes when appellant had not put his character in issue. However, here the jury was already aware of appellant's past convictions through his own testimony. This prior knowledge mitigates the effect of the remark. *Compare, State v. White*, 295 Minn. 217, 226, 203 N.W.2d 852, 858–59 (1973) (attempted introduction of defendant's criminal record into evidence by prosecutor when defendant not testifying was not harmless error).

■ In the second remark cited by appellant, the prosecutor appears to comment on the motivation of various witnesses to lie or tell the truth. While this commentary approaches being a personal statement of who may be telling the truth, it is not that different from the court's own proper instruction to consider the witness's motive for testifying and interest in the outcome of the case. *See* 10 Minnesota Practice, CRIM. JIG, 3.12 (1985).

■ With regard to interjection of the prosecutor's personal opinions in the third cited comment, the court in *State v. Pretty-*

*man,* 293 Minn. 493, 495, 198 N.W.2d 156, 158 (1972), determined that the prosecutor's repeated use of the phrase "I think" at the beginning of many statements in his final argument was misconduct. Nonetheless, the court affirmed the conviction considering the strength of the evidence and the otherwise balanced argument. *Id.*

The effect of this last comment was tempered by the prosecutor's remark immediately following: "That's for you to judge yourselves * * *."

With regard to all three challenged comments, we note also that defense counsel failed to object during the closing argument itself, thus implying "that the defense found nothing improper in the argument." *See State v. Daniels,* 332 N.W.2d 172, 180 (Minn.1983).

While we share the concern recently expressed by the supreme court in *State v. Merrill,* 428 N.W.2d 361, 373 (Minn.1988), regarding prosecutorial conduct and recognize that a pattern of improper prosecutorial remarks may earmark future convictions for reversal, we conclude under the facts of this record that the prosecutor's remarks did not rise to the serious level of misconduct which would require reversal. Applying the lower scrutiny test from *Caron,* it does not appear that the misconduct likely played a substantial part in influencing the jury to convict. It was not an abuse of discretion, in the light of the whole record, for the trial judge to deny appellant's motion for mistrial.

### DECISION

The evidence was sufficient to support the jury's verdict. The appellant was not prejudiced by the refusal of the trial court to allow impeachment of an adverse witness through evidence of a juvenile adjudication of delinquency. The appellant was not prejudiced by the improper comments of the prosecutor.

AFFIRMED.