**STATE of Minnesota, Respondent,**

v.

**New Chue HER, Appellant.**

No. C4–93–860.

Court of Appeals of Minnesota.

Jan. 4, 1994.

Review Denied March 15, 1994.

Philip G. Villaume and Kyle D. White, Philip G. Villaume & Associates, Bloomington (Peter N. Thompson, of Counsel, St. Paul), for appellant.

Hubert H. Humphrey, III, Atty. Gen., and Tom Foley, Ramsey County Atty., Jeanne L. Schleh, Asst. County Atty., St. Paul, for respondent.

Considered and decided by AMUNDSON, P.J., and SCHUMACHER and FLEMING*, JJ.

## OPINION

SCHUMACHER, Judge.

This appeal is from an order issued pursuant to this court's remand, denying appellant New Chue Her's motion for a new trial based on claimed errors in translating Hmong testimony at trial, and other grounds. We affirm.

## FACTS

Her was convicted of first degree criminal sexual conduct following a jury trial. The complaint alleged a sexual assault committed on March 14, 1990, against 18–year–old L.Y., a recent Hmong immigrant for whom Her had been providing job counseling. L.Y. testified that Her, under the pretext of taking

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

her to apply for a job, lured her to a motel room where he raped her. The testimony of L.Y., as well as that of several other witnesses for the state, was translated from Hmong by two interpreters.

Her filed a direct appeal from his conviction. Appellate counsel argued that the evidence was insufficient to support the conviction and that newly-discovered evidence warranted a new trial. Her filed a pro se supplemental brief claiming errors in the trial translation, as well as other trial errors. This court affirmed the conviction by unpublished opinion but the supreme court granted further review for the purpose of remanding those issues which the opinion did not address. This court in turn remanded to the trial court.

The trial court held a hearing to explore the issue of alleged errors in the trial translation. Three bilingual Hmong witnesses, all with experience in Hmong–English translation, examined the audio tape and transcript of the trial, and testified at the remand hearing about the translation problems. All agreed there were errors in the translation, but they differed on the extent of the problem and the degree of prejudice, as well as the correct translation of specific testimony.

A key issue at the hearing was the interpretation of the Hmong word "mos." Michael Moua, an expert originally retained by Her's counsel, testified that this word, used by L.Y. in describing the offense, can be interpreted as "wrestle," as well as "rape," depending on the context. Moua testified that it was clear from the context of L.Y.'s testimony that she was describing a rape. But Vang Pao Lee, another defense expert, testified that "mos" should not have been translated as "rape." He testified there was a more exact Hmong term for rape, "mos txiag." The state's expert, Sia Lo, disagreed, testifying that in the context of L.Y.'s testimony "mos" meant "rape."

Three other translation problems also figured prominently in the experts' testimony. On cross-examination, defense counsel asked L.Y. how long it had taken to get from the parking lot by her apartment to the motel. As interpreted, L.Y.'s response was, "I don't know how long it take but 2:55, that is the takeoff time." Her actual response, according to Vang Pao Lee, was, in part, "The most it took was close to 59 minutes." Her contends this mistranslation hurt the defense's ability to point out the missing time intervals within L.Y.'s account.

The second prominent error alleged was the failure to literally translate L.Y.'s testimony that she told her family that Her forced her to have sex "us[ing] knife and gun to point at me." The interpreter translated this as "I was in dangerous due to the force." The state's expert, however, described the Hmong phrase, as did Moua, as an idiom for "to force."

The third prominent translation problem occurred when the clan "uncle" notified of the assault tried to describe what would be done in Laos if a married woman was raped. The interpreter asked to consult with Long Yang, a police community liaison officer who was sitting at counsel table with the prosecutor. The court allowed the consultation, but did not allow Yang to state the response, because he had not been sworn. The translation that eventually emerged, in bits and pieces, was that the woman raped, along with the rapist, would be handcuffed and left out in the sun.

Her's defense at trial was that L.Y. had consented to sexual relations at the motel. He testified that L.Y. made suggestive comments to him in the car, and touched him. On cross-examination, he testified that he thought L.Y. was lying because she was afraid of her husband, who in Hmong culture would have a right to beat her for having an affair. He also said, in response to the prosecutor's suggestion that the Hmong may blame the woman raped, "In my culture there is no such thing as rape." .

In rebuttal, the state called a Hmong social worker, Tong Vang, who testified about relations between the sexes in Hmong culture. Vang testified that it was not proper in Hmong culture for a woman to touch a man's clothing, or to initiate a kiss, or to be otherwise sexually assertive.

In her closing argument, the prosecutor described the sole issue for the jury as whether to believe L.Y. or Her. The prose-

cutor emphasized the gap in social status between the uneducated L.Y. and the educated, bilingual Her. She argued that the testimony about Hmong culture was helpful in evaluating the witnesses' credibility. She argued that L.Y.'s failure to flee and her delay in reporting the offense were due to cultural restraints. She noted Her's statement that in his country there is no such thing as rape, and said, "this is not his country, this is our country."

## ISSUES

1. Did the prosecutor commit prejudicial misconduct?

2. Was Her denied a fair trial by errors in interpreting trial testimony?

3. Did the court abuse its discretion in admitting expert testimony at trial?

## ANALYSIS

■ 1. Her argues that the prosecutor committed prejudicial misconduct by engaging in cultural stereotyping, primarily in closing argument. In reviewing a claim of prosecutorial misconduct, this court must look at the prosecutor's closing argument as a whole, rather than selecting certain phrases or remarks that may be taken out of context or given undue prominence. *State v. Walsh,* 495 N.W.2d 602, 607 (Minn.1993). In most cases, prosecutorial misconduct will be deemed harmless unless it played a substantial part in influencing the jury to convict. *State v. Boitnott,* 443 N.W.2d 527, 534 (Minn. 1989); *see also State v. Caron,* 300 Minn. 123, 128, 218 N.W.2d 197, 200 (1974). If unusually serious misconduct has occurred, the error must be shown to be harmless beyond a reasonable doubt. *Caron,* 300 Minn. at 128, 218 N.W.2d at 200.

Her compares the prosecutor's argument that a Hmong woman would not seduce a Hmong man to arguments that a white woman would not have consensual sex with a black man. *See, e.g., Miller v. North Carolina,* 583 F.2d 701, 707 (4th Cir.1978) (argument that white female would not sleep with black male was appeal to racial prejudice contrary to concept of equal protection). This considerably overstates the racial and cultural overtones of both the prosecutor's argument and the trial itself. The charges being tried involved a Hmong man and a Hmong woman. The prosecutor attempted to differentiate them by their social status and educational level, not by racial or cultural factors. There was no potentially inflammatory racial issue involved, as there was in *Miller. See also Kelly v. Stone,* 514 F.2d 18, 19 (9th Cir.1975) (prosecutor's argument that "next time" black defendant might rape someone jurors knew was inflammatory appeal to racial prejudice).

The prosecutor should not attempt to inflame the jury. *Walsh,* 495 N.W.2d at 606. With the exception of one comment, however, the prosecutor's statements about Hmong cultural differences were not potentially inflammatory. The apparent differences between Hmong and American cultures in their treatment of rape, adultery, and female sexuality were a major element of the trial. The defense itself brought out the distinct Hmong treatment of the problem of adultery. The prosecutor's closing argument was primarily a proper commentary on these cultural attributes.

■ The potentially inflammatory comment in the prosecutor's closing argument is the statement, "this is not [Her's] country, this is our country." We do not agree with the state's claim that Her "opened the door" for this argument. The defense presented no expert witness on Hmong culture, and elicited relatively little evidence about that culture in comparison to the prosecution. *Cf. State v. Lee,* 494 N.W.2d 475, 480–81 (Minn. 1992) (not reversible error to present facts of another Hmong rape case to counteract arguably misleading defense testimony about Hmong attitudes towards rape allegations). Her himself testified that "there is no such thing as rape" among the Hmong only under intense cross-examination.

Nevertheless, the prosecutor's invitation to the jury to distinguish Her's nationality from their own must be taken in context. The prosecutor was responding to Her's testimony that there was no rape in Hmong culture and appealing to principles of American law, rather than making a xenophobic plea to convict Her because of cultural differences.

Even assuming the argument was misconduct, we conclude it was not unusually serious misconduct and did not play a substantial role in influencing the jury to convict.

■ 2. Her contends that errors in the translation of trial testimony denied him his due process right to a fair trial. In addressing this claim, we apply a standard which asks whether the translation of trial testimony was "on the whole adequate and accurate." *State v. Mitjans,* 408 N.W.2d 824, 832 (Minn.1987). The *Mitjans* court stated:

> Translation is an art more than a science, and there is no such thing as a perfect translation of a defendant's testimony. Indeed, in every case there will be room for disagreement among expert translators over some aspects of the translation. Defense counsel, with the assistance of the defendant's own interpreter, is always free to object contemporaneously if counsel believes that the court-appointed interpreter has significantly misinterpreted or omitted parts of the defendant's testimony.

*Id.* The defendant has the "burden of proving on appeal that the interpretation was inadequate." *State v. Montalvo,* 324 N.W.2d 650, 652 (Minn.1982).

The trial court found that although there were errors in translation, these errors on the whole benefitted the defense. The court also found that Her waived the issue by failing to object to the translation, even though he was specifically given an opportunity to do so by the court.

In *Mitjans,* the alleged translation errors involved only the translation of the defendant's testimony. *Mitjans,* 408 N.W.2d at 831–32. Assessing the impact of the claimed errors involved only the question whether "the essence of defendant's testimony was adequately conveyed to the jury." *Id.* at 832. Here, it was the testimony of the complainant, and of several other prosecution witnesses, that was translated. Although there is no clear standard for determining what is an "adequate" translation, we will examine the effect of the translation errors on Her's ability to present a defense.

First, we reject Her's argument that the Hmong word "mos" was erroneously translated as "rape." As the trial court found, the expert testimony at the remand hearing supports this translation of the word in the context in which L.Y. used it.

L.Y.'s testimony that she and Her were in the parking lot for 59 minutes (mistranslated as "2:55 takeoff time") would probably have been explored by defense counsel, and used in arguing the gaps in L.Y.'s account of the incident. But this error did not prevent defense counsel from pointing out the missing blocks of time in L.Y.'s story, as one of a long list of improbabilities and alleged inconsistencies in her testimony. The translation error did not significantly hamper the defense.

Many of the translation errors were immaterial. It is irrelevant that the interpreter mistakenly said L.Y.'s apartment was in the basement. The Hmong idiom "with knives and guns" appears to have been accurately translated as "to force." Even if it was not, however, the implied assertion that L.Y. saw a knife and gun in Her's possession would inevitably have been clarified by the prosecutor on re-direct. The essence of the clan "uncle" 's testimony about the Hmong treatment of a rape victim was conveyed to the jury. Any loss of nuance in this peripheral area did not prejudice Her.

The trial court concluded, based on the expert testimony, that the translation errors prejudiced the prosecution more than the defense. We question this conclusion, for several reasons. While the essentials of L.Y.'s account were clearly conveyed, a more complete and graphic account of the rape could have hurt the prosecution by making L.Y. seem less naive than the prosecutor suggested. The interpreter's choice of a euphemism for "txiag" certainly avoided this effect. A more complete translation of L.Y.'s testimony could also have exposed more possible inconsistencies between her testimony and prior statements. The poor translation, yielding an often incoherent English, may have reinforced the prosecutor's portrayal of an uneducated, unsophisticated woman, taken advantage of by an experienced and well-educated Her.

L.Y.'s lack of sophistication was a major theme of the prosecution's case. The prosecutor emphasized L.Y.'s unfamiliarity with what a motel was. She argued that Her, who had significant power over L.Y.'s life through his threat to cut off her welfare benefits, took advantage of a woman far beneath him in social status, "arrogantly confident" that she would never tell. While the errors in translation may have inadvertently reinforced this argument, the broad standard we must apply is whether the translation was "on the whole adequate and accurate." *Mitjans,* 408 N.W.2d at 832.

Although this subtle impact of the translation may be relevant, our focus must be on the tangible effect of the translation errors shown. The supreme court has noted that trial interpretation is necessarily imperfect. *Mitjans,* 408 N.W.2d at 832. Any translation is inevitably a screen placed between the witness and the jury, affecting the jury's ability to assess credibility from demeanor, inflection of voice, nuances of language, and details of testimony.[1] *See generally id.* (noting translation is more than simple two-way street between two languages). While the translation here may have inadvertently benefitted the state, Her has not shown tangible prejudice from the specific errors identified.

Defense counsel was able to present a vigorous defense, despite the translation errors. In a lengthy closing argument, defense counsel dissected L.Y.'s story, enumerating a lengthy list of inexplicable inconsistencies and alleged implausibilities. We also note Her's explicit waiver of any objection to the translation. As a native Hmong speaker fluent in English, Her should have been able to assess the quality of the translation. The fact that he found nothing objectionable about it reinforces our conclusion that he was not denied his right to a fair trial.

■ Her contends that the qualifications of the interpreters were not examined and that one of them did not take the oath at trial. *See* Minn.Stat. § 611.33, subds. 1, 2 (1990); *see also* Minn.R.Evid. 604 (interpreter subject to rules on qualification as an expert). Her waived the first issue by failing to object to the translation.[2] As the trial court found, there is a reasonable inference from the transcript that the second interpreter was sworn. Her failed to present any contrary evidence at the remand hearing.

Her argues that the police officers' testimony concerning L.Y.'s initial statements, made through interpreters, poses a triple hearsay problem. *See Mitjans,* 408 N.W.2d at 830–31 (noting but not deciding hearsay issue of defendant's statement being presented through police officer without having translator available to testify). Her, however, made no objection to this testimony at trial. *See State v. Hamilton,* 268 N.W.2d 56, 63 (Minn.1978) (hearsay issue waived by failure to object). Moreover, both interpreters were present in court, and one testified and was cross-examined by defense counsel. Finally, L.Y.'s initial statements were merely corroborative of her trial testimony, except for a physical demonstration of her fall in the motel room, which does not pose the same hearsay problem.

■ Her also contends that the presence of Long Yang at the prosecutor's side, dressed in a police liaison uniform, was prejudicial. Her failed to object at trial, despite being given an opportunity shortly after Yang's only interjection into the trial record. We conclude that Her was not prejudiced by Yang's presence.

■ 3. The state presented the testimony of a social worker who saw L.Y. when she visited the emergency room three weeks after the offense. Her's argument that this

1. The problem posed by incompetent court translation should not be minimized. *See Minnesota Supreme Court Task Force on Racial Bias in the Judicial System,* pp. 76–77 (Final Report, May 1993). The risks are borne, however, by the prosecution as well as the defense, particularly where it is the complainant's testimony that must be translated. Our focus must be on the standard required to afford a defendant a fair trial, not on improvements that should be made in courtroom interpretation generally.

2. There was testimony at the remand hearing that Ramsey County's procedures for selecting interpreters have been improved. There is no requirement that interpreters be certified. Minn. Stat. §§ 611.30–.34 (1990). The need for certification is a matter for the legislature to address.

testimony was improper expert testimony used to bolster the victim's credibility is without merit. *Cf. State v. Saldana,* 324 N.W.2d 227, 231 (Minn.1982) (admission of expert rape trauma syndrome testimony was error). The social worker did not testify as an expert nor give any opinion as to the truth of L.Y.'s account.

Finally, we do not address Her's claim of ineffective assistance of counsel, which was ruled outside the scope of the remand hearing.

### DECISION

The prosecutor did not commit prejudicial misconduct. The errors in translation did not deny appellant his right to a fair trial. No inadmissible expert testimony was presented at trial.

**Affirmed.**