# STATE v. DAVID LEE CARON.

218 N. W. 2d 197.

May 10, 1974—No. 44290.

C. *Paul Jones,* State Public Defender, and *David G. Roston* and *Mollie G. Raskind,* Assistant State Public Defenders, for appellant.

*Warren Spannaus,* Attorney General, *Jonathan H. Morgan,* Solicitor General, *Peter W. Sipkins,* Assistant Solicitor General, and *James B. Early* and *Kenneth E. Raschke, Jr.,* Special Assistant Attorneys General, for respondent.

Heard by Kelly, Scott, and McRae, JJ., and considered and decided by the court.

PER CURIAM.

Defendant, found guilty by a district court jury of selling marijuana in violation of Minn. St. 152.09, subd. 1(1), and sentenced to the maximum term of imprisonment permitted by Minn. St. 152.15, subd. 1(2),[1] contends on this appeal from judgment of conviction and from the order denying his motion for a new trial that (1) the evidence was, as a matter of law, insufficient on the issue of identification to support the verdict; (2) the prosecutor was guilty of misconduct when in his closing argument he alluded to the failure of defendant to call certain witnesses; and (3) the trial court committed error when it failed to give an instruction enumerating all the factors which a jury

---

[1] Defendant is free on bond pending the outcome of this appeal.

should consider in evaluating identification testimony. We affirm.

At 3:55 p. m. on August 15, 1972, Lee H. Urness and John Gundersen, who are undercover agents for the narcotics section of the Minnesota Bureau of Criminal Apprehension, visited a small farmhouse near Shell Lake in Becker County for the purpose of attempting to purchase marijuana from the occupants. After purchasing three "lids" of marijuana at $15 each from an unidentified male occupant, who talked with them for about 10 minutes, the agents went to Detroit Lakes, where they talked with the county attorney, the county sheriff, and the Detroit Lakes chief of police. Bearing a John Doe warrant which they obtained, the agents returned to the farmhouse 2 days later at about 7:15 p. m. and arrested defendant on a charge of having sold them marijuana on the 15th, the charge on which defendant was eventually convicted.

■ Defendant's first contention is that there was, as a matter of law, insufficient evidence that he was the man who sold the marijuana on the 15th. We have carefully read the transcript of defendant's trial and conclude that there is no merit to this contention.

The two key witnesses against defendant at the trial were the two agents, Urness and Gundersen. They both testified that they had sufficient opportunity during the 10 minutes they were in the house on the 15th to get a good look at the person with whom they were dealing and that they were positive in identifying defendant as that person. Admitting that the interior of the house was somewhat dark on that day in that the shades were pulled and the lights were off, they testified that enough daylight was entering the house through the shades to permit them to see everything. The only weakness in their identification is the discrepancy between defendant's actual appearance and the description which they gave to local authorities and which appeared in the complaint, the discrepancy being that defendant had a moustache whereas their description stated that the seller had no facial hair.

With respect to this discrepancy Urness testified that he observed the moustache on the person who made the sale but that he did not think that this constituted facial hair, his view being that facial hair implied a big bushy beard like one he himself once had. He added that another reason for the discrepancy was that he and Gundersen had disagreed over whether the party had a moustache. It appears that in every other detail the agents' description fit defendant and that it did not fit the only other male occupant of that house, one Mike Brun, whom the agents apparently knew.[2]

As we noted in State v. Senske, 291 Minn. 228, 230, 190 N. W. 2d 658, 659 (1971):

"Identification testimony need not be positive and certain; it is enough for a witness to testify that it is his opinion, belief, impression, or judgment that the defendant is the person he saw commit the crime. State v. Sutton, 272 Minn. 399, 138 N. W. (2d) 46. The factors affecting the reliability of eyewitness testimony, such as time for observation and circumstances under which the observation was made, go to the weight to be accorded the testimony, not to its admissibility."

In Senske, we also pointed out that every discrepancy in identification testimony need not be treated as fatal[3] and that reference should be made to circumstantial evidence in determining whether the jury's finding of guilt beyond a reasonable doubt is supported by the evidence.

---

[2] We should point out that there was an attempt on defendant's part at the trial to show that he could not have been the person who made the sale because he always wears glasses and yet the agents testified that the person didn't wear glasses. The expert testimony on this point was that, although defendant should wear his glasses, he can see, although not well, without them and does not suffer for not wearing them. Thus, the agents' testimony that the person was not wearing glasses does not exculpate defendant because defendant simply may not have been wearing his glasses.

[3] See, also, State v. Saunders, 293 Minn. 372, 196 N. W. 2d 286 (1972); State v. Otten, 292 Minn. 493, 195 N. W. 2d 590 (1972).

The agents testified to other facts corroborating their identification testimony. First, they testified that they asked the party on the 15th if he lived there and that he said yes. This is evidence that defendant was the person who made the sale, because it is undisputed that he and Mike Brun were the only males living at the farmhouse at that time and it is clear that the person who made the sale was not Mike. It is clear that the person was not Mike because (a) the officers knew Mike; (b) their description fit defendant, not Mike; and (c) the person, in response to a question, stated that Mike would not be back until 6 p. m. because he was at vocational school. Second, the agents testified that on the 17th, defendant, before learning that they were there to arrest him, spoke to them as one would who had seen them earlier, asking them how their week had gone.

In summary, we think it is clear that the evidence was sufficient on the issue of identification to support the verdict.

■ We believe that defendant is correct in his statement that the prosecutor erred by alluding in his closing argument to the failure of defendant to call certain alibi witnesses, but we do not agree with defendant that this warrants a new trial.

The facts are these: Defendant took the stand in his own defense, claiming that on the 15th he was at the farmhouse only until about 2:30 p. m., when he drove to nearby Detroit Lakes where he had a couple of beers and went to Arnold Warnke's gas station to see if he could use a hoist to repair his automobile. He testified that at about 4:15 p. m. he met a friend, Steve Swanson, and was with him for a short time before returning to the farmhouse around 5 p. m. Although defendant called Swanson as an alibi witness, he did not call anyone to corroborate that part of his alibi bearing on where he was at the time of the sale to the agents. It was this failure to which the prosecutor alluded in his closing argument, stating:

"When he went to Arnie's he didn't remember if he talked to Arnold Warnke or Mr. Nelson. He stated he would buy all his gas there. Of course, we haven't seen Mr. Warnke or Mr. Nelson

today. Also, he went to the liquor store, of course, we haven't seen anybody from the liquor store."

The following fairly recent cases support defendant's claim that this statement by the prosecutor was improper: State v. White, 295 Minn. 217, 203 N. W. 2d 852 (1973) ; State v. Bell, 294 Minn. 189, 199 N. W. 2d 769 (1972) ; State v. Russell, 282 Minn. 223, 164 N. W. 2d 65, certiorari denied, 396 U. S. 850, 90 S. Ct. 109, 24 L. ed. 2d 100 (1969) ; State v. Walker, 279 Minn. 441, 157 N. W. 2d 508 (1968). These cases all state that a prosecutor may not comment on a defendant's failure to call witnesses. We have given two reasons for this rule: First, such comment might suggest to the jury that defendant has some duty to produce witnesses or that he bears some burden of proof; second, the comment might erroneously suggest to the jury that defendant did not call the witnesses because he knew their testimony would be unfavorable.

Although we agree with defendant that the prosecutor's statement was improper, there are two reasons why we do not believe this requires reversal and a new trial.

First, defendant did not object to the statement or seek curative instructions. As we made clear in State v. Bell, *supra,* instructions by the trial court, if carefully worded, can ameliorate the effect of improper prosecutorial comment on a defendant's failure to call witnesses. That being so, defendant's failure to object or to request curative instructions weighs heavily in our decision.

Second, we believe that the error was harmless error. The test of determining whether prosecutorial misconduct was harmless depends partly upon the type of misconduct with which we are dealing. That is, the more serious the misconduct, the more certain of its effect this court has felt that it should be before labeling the error harmless. Thus, in cases involving unusually serious prosecutorial misconduct this court has required certainty beyond a reasonable doubt that the misconduct was harmless before affirming. See, e. g., State v. White, *supra,* where this court

applied the harmless-error-beyond-a-reasonable-doubt test in holding that defendant was entitled to a new trial because the prosecutor improperly introduced evidence of defendant's prior criminal record.[4] On the other hand, in cases involving less serious prosecutorial misconduct this court has applied the test of whether the misconduct likely played a substantial part in influencing the jury to convict. See, e. g., State v. Prettyman, 293 Minn. 493, 198 N. W. 2d 156 (1972), where this court applied the latter test in determining that defendant was not entitled to a new trial because the prosecutor expressed his personal opinion in his closing statement.

The test which we have applied in this case is the test of whether the misconduct likely played a substantial part in influencing the jury to convict. In applying this test, we might conclude that the error was prejudicial were we to agree with defendant's argument that the evidence against him was weak. However, we believe that the evidence against defendant was strong. Not only did two trained law-enforcement personnel positively identify defendant as the person from whom they had purchased the marijuana, but there was other evidence which corroborated their identification and made it extremely likely that defendant was the person with whom they had dealt. Under these circumstances we cannot conclude that the error likely played a substantial role in influencing the jury to convict.

■ The second error alleged by defendant is the trial court's failure to give detailed instructions, such as those discussed in State v. Burch, 284 Minn. 300, 170 N. W. 2d 543 (1969), on the factors which a jury should consider in evaluating eyewitness identification testimony. In Burch, we stated that the trial court should give such instructions "where requested by defendant's counsel." 284 Minn. 315, 170 N. W. 2d 553. Here, defendant did not request such an instruction and therefore we think that de-

---

[4] That case also involved error of the type committed in this case but we did not base our reversal on that ground.

fendant has waived the right to complain of this omission on appeal.

Affirmed.