STATE of Minnesota, Respondent,

v.

Gorden Alfred ALEXANDER, Appellant.

No. C9-86-589.

Court of Appeals of Minnesota.

Dec. 23, 1986.

Review Denied Feb. 13, 1987.

Hubert H. Humphrey, III, Atty. Gen., Rebecca H. Hamblin, Sp. Asst. Atty. Gen., St. Paul, Ann Carrott, Douglas Co. Atty., Alexandria, for respondent.

C. Paul Jones, Minn. State Public Defender, Susan Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Gordon Alfred Alexander was tried and convicted of the crimes of aggravated forgery and uttering a forged instrument. Alexander appeals the conviction, contending the evidence was insufficient to sustain the conviction and errors occurring before and during trial require a new trial. We affirm.

## FACTS

Gordon Alexander met Richard Johnson when both were in the Douglas County Jail. Alexander offered Johnson a construction job which would begin when Johnson got out of jail. In anticipation of remaining in Minnesota for this job, Johnson had his mail forwarded from the Veteran's Hospital in Fargo, North Dakota, to Alexander's address.

Johnson was transferred to a jail in another Minnesota county, and Alexander was released. When Johnson was released in July or August of 1983, Alexander picked him up at the jail. Johnson asked for his mail, but Alexander said they would get it later. Two days after his release, Johnson was arrested for DWI and detained for eight or nine days. When released, he could not locate Alexander. Johnson then changed his forwarding address to the V.A. office in Alexandria, Minnesota, but failed to receive his July 1983 veteran's disability check.

Johnson filed a claim for the missing check and provided handwriting samples for the Secret Service, the investigating agency. The investigation revealed that the missing check had been cashed in July 1983 at the Corral Nightclub in Nelson, Minnesota. The back of the check contained a signature purporting to be Johnson's and the additional signature of "Gordy Gordy Alexander". Johnson told the Secret Service that he had not signed the check and that he had not authorized Alexander to sign the check.

Alexander was charged with one count of aggravated forgery and one count of uttering a forged instrument. Following an omnibus hearing, the trial court set the trial for a day certain because of out-of-state witnesses. In preparing for trial, Alexander's court-appointed attorney realized he had represented Johnson in a case in which Alexander had been a potential witness and withdrew from representation. Another attorney was substituted one week before trial.

On the day before trial Alexander's new attorney requested a continuance to prepare for cross-examination of the State's document examiner and to locate and interview potential witnesses. The court denied the continuance, but stated that the motion could be renewed after the State's case. Alexander's attorney did not renew his motion.

At trial James Hinnenkamp, the owner of the Corral, testified that he knew Alexander. He stated that in July 1983 Alexander told him that he was broke and needed money for gas. Alexander asked Hinnenkamp to cash a second-party check for $444. Hinnenkamp identified this check as Johnson's July 1983 V.A. benefits check. Alexander reminded Hinnenkamp that Johnson owed him money because of a bad check. Hinnenkamp asked Alexander to sign the check, deducted the amount owed him, and gave Alexander the remainder, which was over $300. Hinnenkamp identified Alexander from a photo line-up.

Nancy Berthold, a documents examiner for the Secret Service, testified that she compared the signature of R.D. Johnson on the check with Johnson's actual signature. She stated that there were many differences between the two and there was nothing to indicate that Johnson had endorsed the check and only a "remote possibility" that he had. Berthold testified that it was likely that Alexander had written "Gordy Gordy Alexander" on the check. She stated that Alexander "could have" signed the endorsement R.D. Johnson, but she was not certain.

During direct examination of Jack Shaller, a Secret Service agent, the following exchange took place while the prosecutor attempted to lay foundation for an exhibit:

Q. After speaking with Mr. Hinnenkamp, did you eventually obtain handwriting samples from the defendant?

A. Did I obtain handwritings?

Q. Did you go about the process of obtaining handwritings?

A. Yes well, I went to Gordon Alexander's residence after obtaining a federal grand jury subpoena.

Q. And Mr. Alexander complied with the subpoena by providing samples to Mr. Shaughnessy, is that correct?

A. Yes, at a later date.

Q. And did you also obtain voluntarily from Mr. Alexander on a previous occasion some handwriting samples?

A. On a previous investigation?

Q. I will show you what is marked as State's Exhibit 8, Mr. Schaller. Can you tell me what that is?

A. This is Secret Service Form 1607A. This and a few other forms were obtained from him on a previous investigation.

Alexander's attorney withheld his objection to the improper reference to a previous investigation to avoid calling attention to it. When the prosecutor realized that the jury might speculate on the reasons for a previous investigation, he withdrew the exhibit and began questioning in other areas. Later in chambers the defense moved for a mistrial. The judge denied the motion.

During final arguments the State, attempting to rebut a suggestion that Johnson was only paying off Alexander's bad checks, stated, "I ask you if that is credible evidence. Where are those checks?" The defense again moved for a mistrial. The motion was denied. Alexander did not seek a curative instruction.

Alexander did not testify at trial and called no witnesses. He was found guilty of aggravated forgery and uttering a forged instrument.

## ISSUES

1. Was the evidence sufficient to sustain Alexander's conviction for aggravated forgery and uttering a forged instrument?

2. Did prejudicial errors entitle Alexander to a new trial?

## ANALYSIS

### I

Alexander argues that the State did not meet its burden of establishing that Alexander forged Johnson's name and that Alexander knew the signature was forged when he cashed the check.

■ The evidence presented at trial showed that Johnson did not receive his July 1983 V.A. benefit check; the check had been forwarded from Fargo, North Dakota, to Alexander's address; Alexander did not give Johnson his mail; Johnson did not endorse the check; a witness saw Alexander sign his name to the check; the document examiner believed Alexander could have signed Johnson's name to the check; and Alexander was given over $300 by the owner of the Corral. This is sufficient evidence for the jury to reasonably conclude that Alexander was guilty of aggravated forgery and uttering a forged instrument.

### II

■ Alexander claims that he was denied a fair trial because of prejudicial trial errors. The first alleged error is the Secret Service agent's statement about a prior investigation. Evidence of other crimes is not admissible except for limited and specific purposes. *State v. Sweeney*, 180 Minn. 450, 231 N.W. 225 (1930); Minn.R. Evid. 404(b). However, Agent Shaller's testimony alludes to a previous investigation, not a previous conviction. The agent did not state that Alexander was the subject of the investigation. We do not believe that this testimony is sufficiently explicit to lead the jury to conclude that Alexander had a previous record. Nor do we believe this testimony played a significant role in persuading the jury to convict. *See State v. Haglund* 267 N.W.2d 503, 506 (Minn. 1978).

Alexander also claims the prosecutor's comment about other checks during final arguments was prejudicial error. The State may not shift the burden of proof to the accused by commenting about his failure to call witnesses or to present evidence. *State v. Caron*, 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974). Asking where the other checks were may suggest that Alexander has a burden to disprove the case against him. The standard of review for prosecutorial misconduct is determined by the type of conduct:

[I]n cases involving unusually serious prosecutorial misconduct this court has required proof beyond a reasonable doubt that the misconduct was harmless before affirming. * * * On the other hand, in cases involving less serious prosecutorial misconduct this court has applied the test of whether the misconduct likely played a substantial part in influencing the jury to convict.

*State v. Rule*, 355 N.W.2d 496, 498 (Minn. Ct.App.1984) (quoting *State v. Caron*, 300 Minn. at 127–28, 218 N.W.2d at 200).

■ We believe the lesser standard is applicable here. The improper statement was not major and did not go to the merits of the case. We also note that prosecutorial error is sometimes curable by corrective instructions, *State v. Race*, 383 N.W.2d 656, 664 (Minn.1986). Although no corrective instructions were requested, the court properly instructed the jury on the burden

**28**

of proof. Any substantial impact on the jury is unlikely. The evidence against Alexander was strong. *See State v. Tungland,* 281 N.W.2d 646 (Minn.1979).

Finally, Alexander argues that the trial judge's failure to grant a continuance was error that entitles him to a new trial. The trial court has broad discretion in determining whether to grant or deny a continuance. *State v. Holmes,* 281 Minn 294, 295, 161 N.W.2d 650, 651 (1968). Alexander is entitled to a new trial only if the denial of a continuance so prejudiced him in preparing or presenting his defense that it materially affected the outcome of the trial. *State v. Vance,* 254 N.W.2d 353, 358–59 (Minn. 1977).

We are not persuaded that the denial of the continuance affected the outcome of the trial. Cross-examination was thorough and showed familiarity with the case. The documents examiner was adequately questioned. A continuance was not requested after the close of the State's case, although the court had said it would consider such a request. Alexander has failed to show prejudice and is not entitled to a new trial.

### DECISION

Affirmed.