STATE of Minnesota, Respondent,

v.

Quintin Eugene GERALD, Appellant.

No. C2–91–1789.

Court of Appeals of Minnesota.

June 23, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

Lawrence W. Pry, Asst. State Public Defender, St. Paul, for appellant.

Considered and decided by KALITOWSKI, P.J., and AMUNDSON and FOLEY *, JJ.

## OPINION

KALITOWSKI, Judge.

Following a jury trial, appellant Quintin Gerald was convicted of first degree assault and aggravated robbery. On appeal, he claims there was insufficient evidence to establish the victim suffered great bodily harm. He also argues the prosecutor committed misconduct which denied him a fair trial and the trial court erred in imposing separate sentences for the assault and robbery convictions.

## FACTS

Around 2:30 a.m. on December 23, 1990, cab driver Daniel Melford drove to North Minneapolis to pick up a passenger. While waiting for his passenger, Melford saw appellant and his brother, Kevin Binns, walking down the street. After determining that he had waited long enough for his passenger, Melford agreed to give appellant and Binns a ride.

At trial, Melford testified that appellant and Binns both got into the back seat of the cab, with appellant sitting directly behind Melford. Melford stated that he felt a knife in his ear shortly after he began to drive. He testified that he pushed the knife away and attempted to disorient appellant and Binns by alternately accelerating and braking the cab. According to Melford, Binns leaned over the seat and began going through his pockets while appellant held a knife against his neck. Melford testified that Binns was saying "kill him, kill him" during this time. Binns eventually found between $20 and $30 in Melford's pocket. He took the money from Melford and jumped out of the cab. Appellant also fled the cab and began walking down the street.

Melford testified that he chased appellant in his cab. During the chase, he saw a

---

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn.Const. art. VI, § 2.

police car and signaled the police officer by flashing his headlights. Officer Bret Lindback was in the police car. He testified that he saw two men running from the cab, suspected that a robbery had occurred and began chasing the men. He stated that he eventually caught up with appellant, who was still holding the knife. Officer Lindback testified that he handcuffed appellant after a struggle while other officers apprehended Binns. Melford identified both men as his assailants and then was taken to the hospital.

Appellant's account of the events differed substantially from that given by Melford. Appellant denied that he ever entered Melford's cab or intentionally stabbed Melford. He also denied that he and Binns robbed Melford. He maintained that Melford's injuries occurred accidentally during the fight over a drug transaction.

Dr. Frederic Levy examined Melford in the emergency room at the Hennepin County Medical Center. He testified that Melford was slightly upset about the robbery but was not medically unstable. Dr. Levy stated that Melford's vital signs were normal and he did not have any excessive bleeding. Dr. Levy observed a half-inch long cut on the back of Melford's neck and a wound of approximately the same size in his right ear. The cut on the neck was cleaned and closed with two stitches.

Dr. Levy examined the cut in Melford's ear, ordered an x-ray and an angiogram and admitted Melford to the hospital for observation. The results of the tests showed no serious nerve damage, blood vessel injuries or fractures. Dr. Levy also found no evidence of injury to the eardrum or oral cavity and allowed the cut in his ear to heal naturally. Melford was released on the morning of December 24.

Following the conclusion of the evidence, the trial court instructed the jury on the elements of first degree assault, aggravated robbery and the lesser included offense of second degree assault. The jury found appellant guilty of first degree assault and aggravated robbery. The court sentenced appellant to 134 months for the assault and a concurrent sentence of 88 months for the robbery. Appellant now challenges his convictions and sentence.

## ISSUES

I. Was the evidence sufficient to support appellant's conviction for first degree assault?

II. Did the prosecutor commit misconduct which denied appellant a fair trial?

## ANALYSIS

### I.

Appellant challenges the sufficiency of the evidence to support his conviction for first degree assault. Specifically, he claims the state failed to prove beyond a reasonable doubt that he inflicted great bodily harm upon the victim.

When a defendant challenges the sufficiency of the evidence to sustain a conviction, a reviewing court must analyze the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). The reviewing court must assume the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

The jury found appellant guilty of first degree assault in violation of Minn.Stat. § 609.221 (1990). Under this statute, a person commits first degree assault if he or she "assaults another and inflicts great bodily harm." *Id.* "Great bodily harm" is defined as:

> bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm.

Minn.Stat. § 609.02, subd. 8 (1990). Appellant contends there was insufficient evidence to support the jury's conclusion that Melford's injuries constituted great bodily harm. The state maintains that Melford's

injuries satisfy several portions of the great bodily harm definition.

■■■ The state first argues that Melford's ear injury created a high probability of death. The state emphasizes that the cut in Melford's ear was very close to a major vein and artery and Melford could have bled to death if either the vein or artery had been severed. At trial, the prosecuting attorney repeatedly questioned Dr. Levy about the serious injuries Melford could have sustained had the knife cut a major vein. The prosecutor acknowledged during closing argument that none of these serious injuries had occurred.

We believe the state misreads the high probability of death portion of the great bodily harm statute. The statute defines great bodily harm as *"bodily injury* which creates a high probability of death." *Id.* (emphasis added). Under the plain language of the statute, the injury itself must be life-threatening. The fact that a lesser injury is located near a major organ or vessel and therefore could have been more serious is not sufficient to satisfy the statute.

■■■ The state also argues that Melford's injuries resulted in serious permanent disfigurement within the meaning of the statute. Testimony at trial established that Melford has two scars, each approximately a half-inch in length. One scar is located on the back of Melford's neck behind his ear and the other scar is in his ear.

Although any form of scarring might be deemed disfigurement, we do not believe the evidence supports the conclusion that Melford's scars constitute "serious permanent disfigurement" as the statute requires. *See id.* The two scars are relatively small and in areas where they are not particularly noticeable. In addition, the scars are significantly less extensive and pronounced than those this court previously has found to qualify as serious permanent disfigurement. *See State v. Currie,* 400 N.W.2d 361, 364, 366 (Minn.App.1987) (numerous scars on the backs of child victims supported conclusion that defendant inflicted great bodily harm), *pet. for rev. denied* (Minn. Apr. 17, 1987); *State v.*

*Anderson,* 370 N.W.2d 703, 706 (Minn.App. 1985) (single scar running the length of victim's upper body qualifies as serious permanent disfigurement), *pet. for rev. denied* (Minn. Sept. 19, 1985).

■■■ The state next argues the evidence supports a finding that Melford's injuries caused "a permanent or protracted loss or impairment of the function of any bodily member or organ." Minn.Stat. § 609.02, subd. 8. The state points to Melford's testimony that he experiences a "tightening or sensation" when he yawns or chews. The evidence, however, does not support a finding that Melford sustained a permanent or protracted functional impairment. Dr. Levy specifically testified that Melford's ability to perform bodily functions such as hear, chew, eat or breathe were not impaired by the injuries. We therefore conclude that Melford's testimony is not sufficient to support a finding that he suffers from a permanent loss or impairment of the function of a bodily member.

■■■ Finally, we conclude Melford's injuries do not fit under the statutory category of "other serious bodily harm." Melford suffered two relatively small cuts. One cut was closed with two stitches and the other cut was allowed to heal naturally. According to his own testimony, Melford was able to chase appellant in his cab after he had been injured. After examining Melford, Dr. Levy concluded that his injuries were not serious. The evidence therefore does not support a finding that Melford suffered other serious bodily injury within the meaning of the statute.

In summary, the evidence presented at trial, even when viewed most favorably to the conviction, is insufficient to support a finding that Melford's injuries satisfy the statutory definition of great bodily harm. The great bodily harm element as defined by the legislature mandates that we focus on the injury to the victim rather than the actions of the assailant. Although we find it anomalous that an individual who commits a grievous assault on another may escape a first degree assault conviction because the victim is fortunate enough to

escape serious injury, we are constrained by the language of the statute. The evidence presented at trial was not sufficient to sustain appellant's conviction for first degree assault.

Finally, because we have determined appellant's conviction for first degree assault must be reversed, we need not address appellant's claim that the trial court erred in imposing separate sentences for the robbery and assault convictions.

## II.

Appellant also contends the prosecutor made improper remarks during closing argument which deprived him of a fair trial. The Minnesota Supreme Court has set forth a two-tier test to be used in examining allegedly improper arguments. *State v. Boitnott*, 443 N.W.2d 527, 534 (Minn.1989). In cases involving "unusually serious" misconduct, the court requires that the misconduct be harmless beyond a reasonable doubt. *State v. Caron*, 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974). In cases involving less serious misconduct, the question is whether the misconduct played a substantial part in influencing the jury to convict. *Id.* at 128, 218 N.W.2d at 200.

After examining the prosecutor's closing argument in this case, we agree with appellant that many of the prosecutor's remarks were improper. A prosecuting attorney may not inject into closing argument personal opinion as to a defendant's credibility. *State v. Ture*, 353 N.W.2d 502, 516 (Minn.1984). A prosecutor also should not disparage a defendant. *State v. Moseng*, 379 N.W.2d 154, 156 (Minn.App.1985). The challenged portions of the prosecutor's argument contain expressions of her personal opinion as well as belittling and disparaging remarks. These statements clearly were inappropriate and improper.

Although we in no way condone the prosecutor's conduct, we conclude the prosecutor's statements, when viewed in context, do not amount to unusually serious misconduct. The question therefore is whether the misconduct likely played a substantial role in influencing the jury to convict appellant. *See Caron*, 300 Minn. at 128, 218 N.W.2d at 200. We note that appellant only objected to one of the prosecutor's remarks and did not request cautionary instructions, suggesting that he did not view the remarks as prejudicial. *See Ture*, 353 N.W.2d at 516. After examining the record, we cannot conclude the prosecutor's comments substantially influenced the jury to convict.

## DECISION

Appellant is not entitled to a new trial based on prosecutorial misconduct. The evidence presented at trial was insufficient to sustain appellant's conviction for first degree assault. The conviction therefore is reversed. Appellant's conviction for aggravated robbery is affirmed. We remand for resentencing on the aggravated robbery conviction.

Affirmed in part, reversed in part and remanded.