*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0570**

State of Minnesota,
Respondent,

vs.

Ryan Leroy Smith,
Appellant.

**Filed March 21, 2016
Affirmed
Worke, Judge**

Mille Lacs County District Court
File No. 48-CR-10-316

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Joe Walsh, Mille Lacs County Attorney, Milaca, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Worke, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges his conviction of first-degree driving-while-impaired (DWI), arguing that the district court erred by using his 2005 conviction of criminal vehicular

operation (CVO) to enhance his offense because the prior conviction does not constitute a qualified prior impaired driving incident under current law. He also argues that the prosecutor committed misconduct in his opening statement by urging the jury to consider the potentially "devastating consequences" of his choice to drink and drive, and that a deputy's testimony that he recognized appellant from previous contacts constituted reversible plain error. We affirm.

## D E C I S I O N

### I.

Based on appellant Ryan Leroy Smith's driving conduct in February 2010, a jury found him guilty of DWI in violation of Minn. Stat. § 169A.20, subd. 1(1) (Supp. 2009). The district court enhanced Smith's conviction to a felony based on three qualifying prior impaired driving incidents, including a February 2005 conviction of CVO, in violation of Minn. Stat. § 609.21, subd. 2b(6) (2002).[1] Smith stipulated to the admission of the three prior offenses, but preserved for appeal the issue of whether his 2005 conviction constituted a qualified prior impaired driving offense.

---

[1] Based on Smith's conduct in April 2004, he was convicted of CVO in violation of a statute providing that

> [a] person is guilty of criminal vehicular operation resulting in bodily harm . . . if the person causes bodily harm to another, as a result of operating a motor vehicle . . . in a negligent manner while any amount of a controlled substance listed in schedule I or II, other than marijuana or tetrahydrocannabinols, is present in the person's body.

Minn. Stat. § 609.21, subd. 2b(6) (2002).

To convict Smith of first-degree DWI, the state was required to prove that he committed that offense "within ten years of the first of three or more qualified prior impaired driving incidents." Minn. Stat. § 169A.24 (2008). "'Qualified prior impaired driving incident' includes prior impaired driving convictions." Minn. Stat. § 169A.03, subd. 22 (2008).

Before a 2007 statutory reorganization, Smith's 2005 CVO conviction was listed as a prior impaired driving conviction for purposes of enhancement. *See* Minn. Stat. § 169A.03, subd. 20(2) (2006) (including as prior impaired driving conviction a conviction under "section 609.21(criminal vehicular homicide and injury, substance-related offenses), . . . subdivision 2b, clauses (2) to (6)"). In 2007, however, the Minnesota legislature amended the criminal-vehicular-homicide and injury statute. *See* 2007 Minn. Laws ch. 54, art. 3, § 7, at 248. As a result, the prohibited conduct that formed the basis for Smith's prior conviction was placed in a different subdivision. *See* Minn. Stat. § 609.21, subd. 1(6) (Supp. 2007). That subdivision provided,

> A person is guilty of criminal vehicular homicide or operation . . . if the person causes injury to or the death of another as a result of operating a motor vehicle . . . in a negligent manner while any amount of a controlled substance listed in schedule I or II, or its metabolite, other than marijuana or tetrahydrocannabinols, is present in the person's body.

*Id.* At the same time, the relevant portion of Minn. Stat. § 169A.03 was also amended to provide that a "'[p]rior impaired driving conviction' includes a prior conviction under: . . . section 609.21 (criminal vehicular homicide and injury, substance-related offenses), subdivision 1, clauses (2) to (6)." Minn. Stat. § 169A.03, subd. 20(2) (Supp. 2007). And

3

the legislature directed the revisor to repeal Minn. Stat. § 609.21, subd. 2b(6). 2007 Minn. Laws. ch. 54, art. 3, § 14 (d), at 251. Thus, although Smith committed conduct prohibited as CVO under both the pre- and post-amendment statutes, beginning in 2007, his offense was not listed by statute as a prior impaired driving conviction for the purpose of enhancing a DWI to a felony.

Smith argues that current law does not permit the use of his prior CVO conviction as a qualified prior impaired driving incident to enhance his offense to a felony, and that the district court erred by doing so. We consider issues of statutory interpretation de novo. *State v. Leathers*, 799 N.W.2d 606, 608 (Minn. 2011). If a statute is unambiguous, this court almost always applies its plain language. Minn. Stat. § 645.16 (2014). Nonetheless, in rare cases, further construction beyond a statute's plain and unambiguous language becomes necessary if "the plain meaning leads to absurd or unreasonable results that depart from the purpose of the statute." *State v. Wukawitz*, 662 N.W.2d 517, 525 (Minn. 2003).

We applied this principle to a similar situation in *State v. Retzlaff*, 807 N.W.2d 437 (Minn. App. 2011), *aff'd mem.*, 842 N.W.2d 565 (Minn. 2012). In *Retzlaff*, the district court convicted a defendant of first-degree DWI, using a prior CVO conviction to enhance his offense to a felony. *Id*. at 438. The defendant had been previously convicted under Minn. Stat. § 609.21, subd. 2a (1998) (CVO resulting in substantial bodily harm), but the 2007 statutory amendments codified the same prohibited conduct instead under Minn. Stat. § 609.21, subd. 1(3); Minn. Stat. § 169A.24 was simultaneously amended to provide that convictions under section 609.21, subd. 1(3) would enhance a DWI offense to a first-degree felony. *Id*. at 440. We held that when a DWI defendant was previously convicted of CVO

4

for substantially harming another person while drunk, he is subject to conviction of first-degree DWI, regardless of whether his prior conviction occurred when CVO was codified under an earlier statute, or the current statute. *Id*. at 441. We concluded that this situation "is one of those rare circumstances in which we cannot both follow a statute's plain language and avoid an absurd result that contradicts the statute's obvious intent." *Id.* at 440.

The reasoning in *Retzlaff* applies equally to this case. Although a different statutory subdivision is at issue, we conclude that following the plain language of the current statute, without regard for legislative intent, would lead to a similarly absurd result: Smith's CVO offense, which resulted in bodily harm and unquestionably constituted a prior qualifying offense when it was committed, would lose that designation simply because it was not listed in the recodified statute. *See id*. at 441.

Smith argues that ambiguous penal statutes must be construed in favor of the defendant, and that following *Retzlaff* would rewrite the statutory scheme to expand the class of people subject to DWI laws and effectively apply it retroactively, thus violating the proscription on ex-post facto laws. *See State v. Niska*, 514 N.W.2d 260, 264-65 (Minn. 1994) (declining to apply an amendment retroactively that purportedly clarified a pre-existing statute, based on ex post facto concerns and the rule of lenity). We disagree. When Smith committed his previous offense, the legislature unambiguously provided that his conviction satisfied the requirements for use as a qualified prior impaired driving incident. The district court did not err by using his prior CVO conviction to enhance his DWI conviction to a felony.

## II.

Smith argues that the prosecutor's comment in opening remarks that "some choices carry devastating consequences like injury or loss of life," referring to his choice to drink and drive, inflamed the jury's passions and amounted to prejudicial misconduct. The district court sustained Smith's objection to this argument. A prosecutor commits misconduct by inflaming the passions and prejudices of the jury against the defendant. *State v. Porter*, 526 N.W.2d 359, 363 (Minn. 1995). Although an opening statement need not be "colorless," it must be confined to an outline or description of the facts that a party intends to prove. *State v. Morton*, 701 N.W.2d 225, 237 (Minn. 2005). In addition, "[i]t is improper for a prosecutor to urge the jury to protect society with its verdict." *State v. Hoppe*, 641 N.W.2d 315, 320 (Minn. App. 2002), *review denied* (Minn. May 14, 2002). A prosecutor should not "divert the jury from its duty to decide the case on the evidence[] by injecting issues broader than the guilt or innocence of the accused." *Nunn v. State*, 753 N.W.2d 657, 62 (Minn. 2008) (quotation omitted).

Here, the prosecutor's reference to the "devastating consequences" of drinking and driving inflamed the passions and prejudices of the jury without reference to the specific facts of the case. Because the prosecutor's argument went beyond the facts that the state intended to prove and contained inflammatory language, it amounted to misconduct.

Historically, Minnesota appellate courts have used a two-tiered harmless-error test when reviewing objected-to misconduct. *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012). When the case involves "unusually serious prosecutorial misconduct," this court considers whether the alleged misconduct was harmless "beyond a reasonable doubt." *Id.*

6

(citing *State v. Caron*, 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974)). In cases involving less serious misconduct, this court asks whether the misconduct "likely played a substantial part in influencing the jury to convict." *Id.* at 146, n.6. The Minnesota Supreme Court has questioned, but not decided, whether to continue to apply this two-tiered approach. *See, e.g.*, *State v. Little*, 851 N.W.2d 878, 889 n.2 (Minn. 2014) ("[I]n several cases, we have questioned the continued viability of [the] two-tiered approach to harmless-error review of prosecutorial misconduct."); *cf. State v. Yang*, 774 N.W.2d 539, 559 (Minn. 2009) (recognizing two-tiered *Caron* test). Without resolving this issue, the supreme court has recently simply applied the standard of review for more serious misconduct. *Carridine*, 812 N.W.2d at 146.

Applying the standard for more serious misconduct, as the supreme court did in *Carridine*, we examine whether the misconduct was harmless beyond a reasonable doubt. *See id.* Misconduct is harmless beyond a reasonable doubt "if the verdict rendered was surely unattributable" to the misconduct. *State v. Nissalke*, 801 N.W.2d 82, 105-06 (Minn. 2011) (quotation omitted). In addressing this question, we consider "the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Hohenwald*, 815 N.W.2d 823, 835 (Minn. 2012) (quotation omitted).

The evidence against Smith was overwhelming: the arresting deputy testified that Smith showed signs of intoxication, Smith failed field sobriety tests, and his breath-test results registered an alcohol content over the legal limit. Smith argues that at closing argument, the prosecutor added to his previous improper remarks by telling the jury that

7

Smith "made the wrong choice by drinking and driving" and that it was now the jury's "turn to make a choice." Smith also notes that the district court did not give a curative instruction. But although a curative instruction would have been appropriate, because defense counsel did not request such an instruction, we evaluate the misconduct "to determine whether it was so serious that the [district] court should have intervened *sua sponte* to keep the argument within permissible bounds." *State v. Stufflebean*, 329 N.W.2d 314, 318 (Minn. 1983). In closing, the prosecutor emphasized that it was not unlawful to drink alcoholic beverages and then drive, lessening the impact of his earlier remarks, and he also told the jury that it had to decide whether the evidence proved Smith's guilt beyond a reasonable doubt. *See id.* at 318-19 (holding that improper argument did not compel reversal when prosecutor did not dwell on it at any length and emphasized that jury's verdict was to be based only on the evidence, and the district court did not deem argument so improper as to require curative instruction or sua sponte intervention). We conclude that the misconduct was harmless beyond a reasonable doubt and does not warrant reversal.

**III.**

Smith argues that the deputy's testimony that he recognized Smith "from previous contacts," combined with the prosecutor's opening remarks, amounted to reversible error. A defendant who fails to object to alleged prosecutorial misconduct generally forfeits the right to appellate review of the purported misconduct. *State v. Ture*, 353 N.W.2d 502, 516 (Minn. 1984). This court, however, may review unobjected-to prosecutorial misconduct if plain error is shown. Minn. R. Crim. P. 31.02; *State v. Ramey*, 721 N.W.2d 294, 297–99 (Minn. 2006). The defendant has the burden to demonstrate error that is plain, which is

8

usually shown "if the error contravenes case law, a rule, or a standard of conduct." *Ramey*, 721 N.W.2d at 302. The burden then shifts to the state to demonstrate that the error did not affect the defendant's substantial rights. *Id*. Substantial rights are affected if "the error was prejudicial and affected the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998).

Relying on *State v. Strommen*, 648 N.W.2d 681 (Minn. 2002), Smith argues that the deputy's testimony amounted to plain error. In *Strommen*, the supreme court held that a police officer's testimony concerning a defendant's prior contacts with police was irrelevant and prejudicial when its intended purpose was to establish that the defendant was a person of bad character, and the jury may have been motivated to punish him for other bad acts. *Id*. at 687-88. But the officer in *Strommen* testified as to multiple prior contacts and incidents, and the references were deemed prejudicial because another witness also testified that the defendant had killed another person during a fight. *Id*. at 686-88. In contrast, the deputy's testimony here, that he identified Smith from prior contacts, was in responding to a question about how he had identified the driver of the vehicle, did not contravene caselaw, a rule, or a standard of conduct. Therefore, no plain error occurred. Further, even if Smith were able to demonstrate that it did, such an error did not affect his substantial rights because the reference to his prior contact with police was brief, the prosecutor did not elicit the information, and the evidence of his guilt was strong. *See State v. Stanifer*, 382 N.W.2d 213, 218 (Minn. App. 1986) (holding that a passing reference to prior contact with police, which did not necessarily imply that the defendant was a criminal,

9

did not deny him a fair trial, especially when the evidence of guilt was overwhelming).

We therefore reject Smith's argument.

**Affirmed.**