*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1122**

State of Minnesota,
Respondent,

vs.

Jeffrey Allen Bachman,
Appellant.

**Filed April 18, 2016
Affirmed
Kirk, Judge**

Hennepin County District Court
File No. 27-CR-14-7992

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Sandra H. Johnson, Bloomington City Attorney, Jennifer Cross, Assistant City Attorney, Bloomington, Minnesota (for respondent)

James M. Ventura, Wayzata, Minnesota; and

Jesse Oelfke, Carver, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Peterson, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Following a jury trial and conviction for driving under the influence of a controlled substance, appellant challenges the admission of blood-test results and certain expert

testimony. He also asserts that the state committed prosecutorial misconduct during closing argument. We affirm.

## FACTS

Shortly before midnight on December 6, 2013, appellant Jeffrey Allen Bachman drove on the wrong side of the road, causing a head-on collision. Respondent State of Minnesota charged appellant with driving under the influence of a controlled substance. In June 2015, the district court held a three-day jury trial. The evidence received at trial is summarized below.

The police officer dispatched to the scene of the accident arrived at approximately 12:35 a.m. She observed no signs that appellant braked prior to striking the other vehicle. Appellant admitted to the police officer that he had taken Zolpidem (also known as Ambien) that day, and that he must have gotten "tired," "drifted off," or become distracted. He exhibited several indicia of intoxication and failed field sobriety testing. A preliminary breath test showed that appellant's alcohol concentration was 0.00. Based upon her training and experience, the officer deduced that appellant was under the influence of a controlled substance and arrested him.

After appellant consented to a blood test, the officer transported him to a hospital, bringing a sealed test kit from the Bureau of Criminal Apprehension (BCA). At 2:26 a.m., the officer observed a phlebotomist draw appellant's blood using the kit. The vial of blood was then placed back into the kit, resealed, and sent to the BCA for testing.

Jody Nelson, a BCA forensic toxicologist, tested appellant's blood sample. Nelson has a bachelor's degree in biology and 25 years of laboratory experience, including over

16 years in the toxicology section of the BCA laboratory. Without objection at trial, Nelson testified that Zolpidem "is prescribed for sleep induction" and that appellant's blood test showed 0.109 milligrams of Zolpidem per liter. The state sought to introduce the BCA's laboratory-analysis request and the report on the examination of physical evidence concerning the blood-test results (collectively, the BCA report). The district court received the BCA report into evidence, despite appellant's objections to foundation and chain of custody.

Over appellant's objection, the district court allowed Nelson to testify that a drug's therapeutic effects usually occur within a "general therapeutic range," that Zolpidem's general therapeutic range is .08-.30 milligrams per liter, and that, within this range, Zolpidem should induce sleep. The district court also allowed her to testify to the "signs and symptoms" of using Zolpidem, and that the drug is generally absorbed quickly, achieving a peak concentration around 90 minutes after ingestion.

The jury found appellant guilty of driving under the influence of a controlled substance. This appeal follows.

## D E C I S I O N

**I.** **The district court did not deny appellant's constitutional right to confrontation or abuse its discretion by admitting the blood-test evidence.**

Appellant argues that admission of the BCA report violated his right to confrontation because the phlebotomist who drew appellant's blood sample did not testify, and there was inadequate notice that the phlebotomist would not testify under Minn. Stat. § 634.15, subd. 1(c) (2014). He also contends that the officer could not lay foundation for

3

a blood test, as she did not know the phlebotomist's qualifications or the proper procedure to draw blood, citing Minn. Stat. § 634.15, subd. 1(a)(2)(ii) (2014).

We review the district court's evidentiary rulings for abuse of discretion. *State v. Anderson*, 789 N.W.2d 227, 234-35 (Minn. 2010). However, whether an evidentiary ruling violates a defendant's constitutional rights is a question of law that that we review de novo. *Id*. at 235.

### A. Right to confrontation.

Both the United States and Minnesota Constitutions guarantee a defendant the right "to be confronted with the witnesses against him." U.S Const. amend. VI; Minn. Const. art. I, § 6. Admitting testimonial out-of-court statements violates a defendant's right to confrontation unless the declarant is unavailable to testify at trial and the defendant has had a prior chance to cross-examine the declarant. *State v. Caulfield*, 722 N.W.2d 304, 308 (Minn. 2006) (citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004)).

Although the BCA lab report is testimonial under *Crawford*, Nelson, the report's author, testified at trial. *See Caulfield*, 722 N.W.2d at 310. Therefore, admission of the report did not violate appellant's confrontation rights. *Id.* at 308. As in *State v. Ziegler*, 855 N.W.2d 551, 558 (Minn. App. 2014), appellant "conflates evidentiary requirements based on authenticity and foundation with the constitutional right of confrontation." The United States Supreme Court explained this distinction in *Melendez–Diaz v. Massachusetts*:

4

> [W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. While . . . it is the obligation of the prosecution to establish the chain of custody, this does not mean that everyone who laid hands on the evidence must be called. . . . It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony is introduced must (if the defendant objects) be introduced live.

557 U.S. 305, 311 n.1, 129 S. Ct. 2527, 2532 n.1 (2009) (citations and quotation omitted).

## B. Foundation for admission of the BCA report.

In *State v. Dille*, 258 N.W.2d 565, 567 (Minn. 1977), the Minnesota Supreme Court stated:

> The proponent of a chemical or scientific test must establish that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability. . . . Without a foundation guaranteeing the test's reliability, the test result is not probative as a measurement and hence is irrelevant.

It is the state's burden to provide "a sufficient indicium of reliability to establish the prima facie admissibility of the test results. It [is] then incumbent upon [the] defendant to suggest a reason why the blood test was untrustworthy." *Dille*, 258 N.W.2d at 568.

Contrary to appellant's assertion, Minn. Stat. § 634.15 (2014) did not require confrontation of the phlebotomist to lay foundation for admission of the BCA blood-test report. First, Minn. Stat. § 634.15, subd. 1(a), merely "creates a presumption of admissibility under certain circumstances, it does not establish a rule of exclusion or inadmissibility." *State v. Flermoen*, 785 N.W.2d 787, 791 n.2 (Minn. App. 2010). Second,

5

Minn. Stat. § 634.15 separately provides for admission of a BCA test report and a report of the person who drew the blood; it does not make the admissibility of one dependent upon the admissibility of the other. *See* Minn. Stat. § 634.15, subd. 1(a)(1)-(2). Further, as this court held in *Flermoen*, admission of blood-test results in a criminal driving-while-impaired proceeding does not require that the blood was drawn by a person qualified to do so under the civil implied-consent law, Minn. Stat. § 169A.51, subd. 7(a) (2014). 785 N.W.2d at 791.

Although more information about the reliability of the blood-draw process in this case would have been preferable, the officer's testimony that she observed a phlebotomist draw appellant's blood at a hospital upon her request, and that the vial of blood was sealed in the test kit and transported to the BCA, was sufficient to lay foundation for the BCA report. This testimony reasonably assures us that it was appellant's blood in the test kit vial and establishes the chain of custody. The district court did not abuse its discretion in admitting the report into evidence.

## II. The district court did not abuse its discretion in allowing the toxicologist to provide expert testimony about the effects of Zolpidem.

Minn. R. Evid. 702 provides that an expert may testify "in the form of an opinion" if the expert's "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." "The knowledge requirement may be satisfied by either formal education or sufficient occupational experience." *Gross v. Victoria Station Farms, Inc.*, 578 N.W.2d 757, 761 (Minn. 1998).

6

Minnesota courts typically have been "liberal" in qualifying experts by virtue of their experience. *State v. Moore*, 458 N.W.2d 90, 96 (Minn. 1990).

Appellant argues that the district court abused its discretion by allowing Nelson to give expert testimony regarding the medical nature and effects of Zolpidem. He contends that this case is analogous to *State v. Klawitter*, 518 N.W.2d 577 (Minn. 1994), where the supreme court held that referring to an officer as a "drug recognition expert" at trial suggested that the officer's opinion was entitled to undue weight, even though the officer had drug-recognition training. *Klawitter*, 518 N.W.2d at 586. However, that case did not preclude officers from providing an opinion on drug impairment, based upon training, experience, and observations following the 12-step drug-recognition protocol. *Id.*

Here, *Klawitter*'s expert-label restriction is inapplicable because Nelson was never presented as a "Zolpidem medical expert" or anything similar. The jury heard significant details about Nelson's education and experience, including through cross-examination by appellant, which highlighted the limitations of this education and experience. Nelson offered no opinion regarding appellant's individual diagnosis, how Zolpidem affected appellant specifically, or the level of Zolpidem in appellant's blood at the time of the accident. In fact, she repeatedly acknowledged that she could not do so.

The jury had adequate information to decide the weight to give to Nelson's testimony and was not misled about her qualifications. "Weighing the credibility of witnesses, including expert witnesses, is the exclusive function of the jury." *State v. Triplett*, 435 N.W.2d 38, 44 (Minn. 1989). The district court did not abuse its discretion

7

by admitting Nelson's testimony about Zolpidem's medical effects and permitting the jury to evaluate it.

**III.    The prosecutor did not commit misconduct during closing argument by misleading the jury as to the burden of proof and/or misstating the evidence as to the level of Zolpidem in appellant's system.**

A prosecutor engages in prosecutorial misconduct when she violates "clear or established standards of conduct, e.g., rules, laws, orders by a district court, or clear commands in this state's case law." *State v. Fields*, 730 N.W.2d 777, 782 (Minn. 2007). When assessing alleged prosecutorial misconduct during a closing argument, "we look to the closing argument as a whole, rather than to selected phrases and remarks." *Ture v. State*, 681 N.W.2d 9, 19 (Minn. 2004).

"The determination of the propriety of a prosecutor's closing argument is within the sound discretion of the [district] court." *State v. McCray*, 753 N.W.2d 746, 751-52 (Minn. 2008) (quotation omitted). When the defendant objected to prosecutorial misconduct at trial, as appellant did here, we have historically applied a two-tiered harmless-error test. *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012). Under this approach, when the case involves "unusually serious prosecutorial misconduct," we consider whether the alleged misconduct was harmless "beyond a reasonable doubt." *Id.* at 150 (citing *State v. Caron*, 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974)). When the misconduct is less serious, we determine whether it "likely played a substantial part in influencing the jury to convict." *Id.* at 146 n.6. However, the Minnesota Supreme Court has questioned the continued viability of the two-tiered approach. *See, e.g.*, *State v. Little*, 851 N.W.2d 878, 889 n.2 (Minn. 2014). Without resolving the issue, it has recently applied the standard of

8

review for more serious misconduct. *Carridine*, 812 N.W.2d at 146. We will do the same here.

**A.** **"If it walks like a duck and talks like a duck, it's a duck" slide.**

During closing argument, the prosecutor presented a PowerPoint slide to the jury stating something to the effect of, "If it walks like a duck and talks like a duck, it's a duck." Appellant argues that this slide misled the jury as to the burden of proof.

Misstatements of the burden of proof are highly improper and, if established, constitute prosecutorial misconduct. *State v. Hunt*, 615 N.W.2d 294, 302 (Minn. 2000). For example, in *State v. Strommen*, the supreme court determined that it was misconduct for the prosecutor to tell the jury that, when faced with "difficult cases," the best approach is to weigh each story and decide which one is more reasonable. 648 N.W.2d 681, 685-86, 690 (Minn. 2002). The prosecutor's statement essentially suggested a preponderance-of-the-evidence standard, which was a clear misstatement of the burden of proof. *See id.*

Here, the prosecutor used a basic, well-known analogy to describe circumstantial evidence. *See Bernhardt v. State*, 684 N.W.2d 465, 477 n.11 (Minn. 2004) (defining circumstantial evidence "as evidence based on inference and not on personal knowledge or observation" and "all evidence that is not given by eyewitness testimony") (quotation omitted). She did not orally refer to the analogy during her argument, and clearly described the state's burden of proof as beyond a reasonable doubt. *See* 10 *Minnesota Practice*, CRIMJIG 3.03 (2015). Therefore, the district court did not abuse its discretion in concluding that the duck analogy did not constitute prosecutorial misconduct. *See McCray*, 753 N.W.2d at 751-52.

9

Even assuming it was misconduct, the error was harmless beyond a reasonable doubt. Unlike *Strommen*, which involved numerous errors and a potential for confusion, the burden of proof in appellant's trial was clearly stated. *See* 648 N.W.2d at 686, 690. Appellant directly addressed the "duck" slide in his closing argument, stating the proper burden of proof. The district court unequivocally instructed the jury on the burden of proof. There was also strong evidence of appellant's guilt, including admissions that he must have drifted off and was taking Zolpidem, the fact that he displayed numerous indicia of intoxication at the scene consistent with use of Zolpidem, and the blood-test results.

**B.      Level of Zolpidem in appellant's blood.**

In closing argument, the prosecutor acknowledged that appellant's blood was drawn two and a half hours after driving, but argued that this "more than encompasses the 90 minutes where we would see the highest peak of [Z]olpidem concentration" and that "the concentration level c[ould] only be going down" at the time of the blood draw. The district court overruled appellant's objection that this argument misstated the evidence.

A prosecutor "may argue all reasonable inferences from evidence in the record" during closing argument, but it "is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw." *State v. Salitros*, 499 N.W.2d 815, 817 (Minn. 1993) (quotation omitted). Here, the prosecutor did not state that any witness had testified that the concentration of Zolpidem in appellant's system was declining, and it constitutes a reasonable inference from the evidence in the record. Nelson testified that Zolpidem is generally absorbed quickly and achieves a peak concentration after 90 minutes of taking the drug, thereafter decreasing. Because the blood

10

draw occurred well outside this 90-minute period and appellant was showing signs of impairment by Zolpidem shortly after the accident, it is reasonable to infer that the concentration was declining at the time of the blood draw. Therefore, the prosecutor did not commit misconduct in making this argument to the jury.

Even if this were misconduct, the error would be harmless beyond a reasonable doubt. As stated above, the evidence against appellant was very strong. Further, the district court later specifically instructed the jury that the statements of the lawyers are not evidence and to disregard any lawyer's statement that differs from the jury's recollection of the evidence. *See* 10 *Minnesota Practice*, CRIMJIG 3.11 (2015).

**Affirmed.**